[Filed February 22, 1892.]

# WILBERT F. KINCAID v. THE OREGON SHORT LINE, ETC., RY. CO.

MASTER AND SERVANT—NEGLIGENCE—PRESUMPTION—FAILURE OF PROOF.—
In an action against a master by a servant to recover damages for injuries
sustained on account of defective machinery, it is presumed that the
master has discharged his duty to the servant by providing suitable
appliances for the use of the servant in the employment and in keeping
them in proper condition; and this presumption can be overcome only
by affirmative proof, either direct or circumstantial, of negligence on the
part of the master. Negligence cannot be inferred from the mere happen-
ing of an accident; and if the circumstances relied upon to show negli-
gence are consistent with ordinary care on the part of the master, the
charge of negligence will fail for want of proof.

Multnomah county: E. D. SHATTUCK, Judge.

Defendant appeals.   Reversed.

*W. W. Cotton,* and *Zera Snow,* for Appellant.

*Thos. O'Day,* for Respondent.

LORD, J.—This is an action by an employé against his
employer to recover damages for an injury received by
reason of an alleged omission to have one of the draw-bars
of one of the cars comprising the train safely keyed while
engaged in the work for which he was employed. The
particular facts alleged, upon which a recovery is sought,
are: "That on said date the defendant failed to have the
draw-bars which connected said cars comprising said train
properly inspected, but on the contrary allowed the said
train to be made up without having one of the draw-bars
in one of the cars comprising same safely keyed. and with-
out having the key to said draw-bar fastened with the usual
split-ring in general use for that purpose; that by reason
of said draw-bar being in said unsafe and dangerous con-
dition, and said train being run at a high rate of speed over
said rough track from La Grande to Haines, a distance of
forty miles, the key which held said draw-bar in place
jumped out, causing said train to part in two sections, so

that when the front section thereof was stopped on the main line of said road, in order for plaintiff to uncouple the same, the rear section of said train, comprising nine cars, came up to and collided with the forward section, which collision was so violent that said entire train of twenty-one cars and engine was nearly completely wrecked and demolished, the said collision causing the injury of the plaintiff herein complained of."

These allegations the defendant denied and set up two defenses, which the plaintiff in his turn controverted; but as neither of them is material to the questions presented by this appeal, we may dismiss them without further consideration.

The judgment went for the plaintiff, and the defendant now seeks to reverse it for error in overruling its motion for nonsuit, and upon certain exceptions reserved to instructions given and to instructions asked and refused.

The bill of exceptions discloses that there were but two witnesses; the plaintiff testifying in his own behalf, and the car inspector on behalf of the defendant. Our first inquiry is, whether the plaintiff's testimony affords any proof of negligence. Upon this subject his testimony is to the effect that at the time alleged he was a brakeman in the employ of the defendant upon its railroad between La Grande and Huntington that the train in question was made up by a separate crew, upon whom devolved such duties and was turned over to the train crew, composed of himself and others, who took charge of and started with it to La Grande; that it was a part of his duty as such brakeman to uncouple cars at the various stations for the purpose of setting out such cars upon the side-tracks, and that he had received orders to set out a car at Haines station; that there was a steep grade a short distance from that station, and that the track at some places, owing to alternate freezing and thawing, was in a rough and uneven condition, but that flags were posted along such places to notify and

caution the engineer to run the train slowly over them; that just before the train reached Haines station it had parted, but immediately upon its arrival there he got off and went between the cars to uncouple them, when the detached portion of the train came up and collided with the portion standing still, causing the cars between which he was standing to catch his arm and to injure it so badly that its amputation afterwards became necessary; that such was the force of the collision that the heads of the draw-bars were driven out of sight and much damage done to the cars and their connections; that upon examination immediately after the accident, it was found that one of the draw-bars where the train was parted was pulled out and that the key was gone.   His testimony also shows how a draw-bar is constructed and attached to the cars to connect them; and in explanation of the purpose of the key and the split-ring, it shows that in the rear end of the spindle of the draw-bar there is a hole through which passes a wrought iron or steel key, and that through the hole in this key there is usually placed a split-ring or piece of wire to hold the key in the spindle; that this key will not stay in its place unless it is securely fastened in that wise; that "it will jump out with the least jar, and the train will separate just as easy as if it was not coupled at all"; that it is not an unfrequent occurrence for trains to break apart on account of a draw-bar pulling out; that "sometimes they run for a month and do not break apart, and sometimes they break apart two or three or four times on a trip"; that sometimes this occurs in starting out from a station in consequence of a too sudden movement or jerking of the train by the engineer, which breaks off the key-ring, but that "these key-rings, if properly in when the train starts, and the train is properly handled, will not jump out"; that sometimes the breaking apart of the train "is caused by steady pulling; if the link treads upon the key the key will bend; it will be on a kind of slant, and

will work up and down until it comes out." He also testifies that they were eight hours late, were running quite rapidly, and had gone nearly forty miles when the accident happened.

The refusal of the trial court to grant the motion for nonsuit, substantially upon this state of facts, constitutes the first assignment of error. The contention is that the evidence fails to show that the defendant was guilty of negligence or failure of duty toward the plaintiff. In cases of this sort, the burden of proof is upon the plaintiff to establish the particular negligence alleged; it cannot be found without evidence, nor can it be presumed. But on the other hand, in the absence of anything to the contrary, it will be presumed that the defendant has performed its duty. And this presumption of a proper performance of duty applies alike to both parties, and is a rule of universal application which must prevail until overcome by proof. Mr. Wood says "The servant, seeking to recover for an injury, takes the burden on himself of establishing negligence on the part of the master and due care on his own part. And he is met by two presumptions, both of which he must overcome in order to entitle him to a recovery: first, that the master has discharged his duty to him by providing suitable instrumentalities for the business and in keeping them in condition; and this involved something more than the mere fact that the injury resulted from a defect in the machinery. It imposes upon him the burden of showing that the master had notice of the defect, or in the exercise of that ordinary care which he is bound to observe, he would have known it. When this is established, he is met by another presumption the force of which must be overcome by him, and that is, that he assumed all the usual and ordinary hazards of the business." (Wood Mast. & Ser. § 382; 2 Thomps. Neg. 1053; Sherm. & R. Neg. § 99.) There must be some affirmative proof of negligence. It is not enough for the party to

merely show the injury or accident, but he must produce some evidence tending to show that the negligence of the defendant caused it. This is not one of the cases where proof of the accident is *prima facie* evidence of negligence; but it is one of the cases where the law presumes a proper performance of duty upon the part of the defendant, and the burden is imposed upon the plaintiff to show its negligence in reference to the particular matter alleged in producing the injury. (*Knahila* v. *O. S. L. etc. R. R. Co.* 21 Or. 136; *Railroad Co.* v. *Wagner,* 33 Kan. 660.)

Nor do we think that the trial court was unmindful of this distinction. It recognized that the burden was on the plaintiff to offer some evidence conducing to show that the plaintiff's injury was occasioned by the negligence alleged, but it evidently considered that the absence of the key after the accident, under the facts and circumstances as shown by the evidence, afforded an inference of negligence which it was the province of the jury to draw. This inference is that from the circumstances of the case the absence of the key indicates or leads to the conclusion that the key of the draw-bar was not fastened with a split-ring or other safe device to hold the key in its place when the train was turned over to the trainmen, otherwise the key would not have worked out and the injury occurred; and as the want of a split-ring in the key to fasten it is a defect in the appliance or car of a kind which a proper inspection would have discovered, it results that the defendant is chargeable with notice of what a proper inspection would have disclosed. In this view it is plain that the trial court did not consider that the mere happening of the accident proves negligence *prima facie,* as contended by counsel, but that it considered that negligence might be shown from circumstances, without direct proof of it by the testimony of eye witnesses; and that when the circumstances in evidence were such that different inferences or conclusions might be drawn from them by different minds, it was for the jury and not

for the court to decide whether or not negligence in fact existed.   But from the circumstances of the case as disclosed by his evidence, the absence of the key after the accident does not warrant the inference of negligence, because it is consistent with the exercise of due care.   It is when the circumstances are such as to lead to the inference of negligence that they are to be submitted to the jury to say whether or not there was negligence.   While negligence is ordinarily a question of fact for the jury, it is only so when the facts and circumstances would authorize the jury to infer it.

The defendant is not an insurer that its cars and appliances are in a safe condition.   The measure of its duty is to exercise reasonable care in this regard, and *prima facie* it is presumed to have done so.

The testimony for the plaintiff shows that there is a liability of the split-ring which fastens the key to break and the key to work or jump out, and the cars to separate in the ordinary uses to which trains are subjected, or from the negligence of his fellow-servants in their operation.   In such case, the absence of the key affords no presumption of negligence, but is consistent with due care.   It may have worked or jumped out, in running over the road, or from negligence of a fellow-servant in the operation of the engine, although properly fastened.   It would not necessarily follow from the absence of the key that it was not properly fastened, but it may be attributed to the ordinary liability resulting from use or from the carelessness of his fellow-servants, as indicated by his testimony.

In *R. R. Co.* v. *Hagan*, 11 Brad. 498, the accident was caused by the absence of any nut to hold the wheel on top of the brake-rod, in consequence of which the wheel came off, when the defendant took hold, and precipitated him to the ground.   He charged that the company negligently permitted this car to be in this dangerous condition when it either knew or ought to have known of its defective charac-

ter.   The court says:   "The only evidence relied upon for a recovery in this case is the absence of the nut from its proper place at the time of the accident.   Unless we hold the appellant an insurer of the safe condition of all its cars, this is not sufficient to sustain a recovery.   It may be well attributed either to the ordinary liability to accidents resulting from use, or from neglect of fellow-servants; in neither of which cases would the company be liable without actual or constructive notice."   Nor is this all.   He testifies that if the split-ring is not in the key the "key will jump out with the least jar"·during the running of the train, and that "the train will separate just as easy as if it were not coupled at all."   Now, he testifies that the train comprising twenty-one cars had, on account of being eight hours behind time, run nearly forty miles at a rapid rate of speed over a road, portions of which were rough and uneven, and up a grade quite steep, before the cars separated and the accident happened.   In view of this testimony, the key must have been fastened when the train was turned over and the plaintiff's duties commenced, or else the key would have jumped out long before they had gone such a distance over a road of that kind and in that condition.   Taking his testimony as true, this conclusion is inevitable.

His testimony further shows that just before the train reached the station it had come up a steep grade, and that on the top of the hill there was a soggy place, where the road was rough and uneven.   It is clear that the key was not out when the train came up this grade, for if it had been the train would have been separated and the rear section would have run down the grade.   But it likewise shows that the key would sometimes work out, letting the draw-bar pull out and the train separate from steady pulling although it may have been properly fastened at the start.   This steep grade was such a place as required steady pulling and a hard strain, and furnished the occasion for the key to become bent, or, as he says, "on a

kind of slant," and cause it "to work up and down until it comes out." Of course, when this state of things exists, necessarily the fastening must give way on the key, whether a split-ring or other device, before the key can work out. Looking at the facts and circumstances, is not the inference reasonable that the steady pulling up this grade had the effect to cause the key to bend, and when it commenced to work up and down to break its fastenings, so that when the train reached the top of the hill where it was soggy and the road was rough and uneven, the key, having no fastening, jarred out and the train parted with the consequences which occurred shortly thereafter? This testimony shows the opportunity for such an occurrence as this accident, notwithstanding the key may have been fastened at the start with a split-ring, and is therefore consistent with prudence and due care, and not with negligence on the part of the company.

Again, his testimony shows that the fastening of the key may be broken and the key come out, causing the train to separate, from taking up the slack, from jerking, and from improper management of the train by the engineer; that the breaking apart of the train from these and other causes is a frequent occurrence, though not an every-day occurrence, so that if the key were properly fastened and every requirement of duty performed, still there would be a liability of the key coming out and the train parting despite these precautions. The burden of showing negligence rests on the plaintiff; and before he can be entitled to a recovery he must prove a state of facts that warrants the inference of negligence; he can not rest his case upon facts as consistent with due care as with negligence. "It is a rule of the law of evidence of the first importance that where the evidence is equally consistent with either the existence or non-existence of negligence, it is not competent for the judge to leave the matter to the jury. There must be some affirmative proof of negligence." (Williams,

J., in *Cotton* v. *Wood*, 8 C B. N. S. 566.)   According to plaintiff's testimony, this accident may have occurred from any of these various causes and the defendant have been without fault.   The absence of the key does not warrant the inference from the circumstances that it was not fastened with a split-ring, otherwise the key would not have worked out, for his testimony shows that it may have been properly fastened when the train started, and came out afterwards by steady pulling, or in running the train, or in its mismanagement by the engineer, hence it cannot be said that an inspection would have disclosed a defective appliance—a key without a split-ring.   The case is not like *Spicer* v. *Iron Co.* 138 Mass. 426, where the defect occurred by reason of a defective hook.   The plaintiff proved by witnesses how the hook appeared after the break, and showed that there was a visible crack or flaw in the hook, and the court held that the evidence tended to show that a careful inspection would have revealed the weakness of the hook, and therefore there was evidence of negligence on the part of the defendant to support the verdict.   It is not enough for the plaintiff to base his injury upon the absence of the key unless the inference is warranted that the defendant is to blame for it.   As its absence may be accounted for consistently with prudence and due care, the inference of negligence sought to be charged is not warranted.   "Mere proof of an injury," said HOLT, C. J., "with attending circumstances showing that the party charged with neglect may be blameless, or may be at fault, will not do.   In such a case there is no evidence tending to show the injury was due to neglect.   Circumstances are merely presented upon which one may theorize as to the cause of the accident." (*Hughes* v. *R. R. Co.* Ky. 16 S. W. Rep. 275.)   The presumption being that the defendant performed his duty, and that the car and its connections were in a reasonably safe condition when turned over to the trainmen, the plaintiff must produce some affirmative proof of negligence derived either from

the testimony of witnesses, or from circumstances of the case, or he cannot recover    As the circumstances show that the accident may have occurred consistently with a due performance of duty, they do not warrant the inference of negligence.

As a consequence, the judgment must be reversed with directions to the court below to enter a judgment of non-suit.