Argued 28 June, decided 18 July, 1904, rehearing denied 3 January, 1905.

## MORGAN'S ESTATE.

### 77 Pac. 608, 78 Pac. 1029.

Jurisdiction of County Courts in Probate Matters.

1. Under Const. Or. Art. VII, § 12, conferring on county courts "the jurisdiction pertaining to probate courts, * * and such civil jurisdiction as may be provided by statute not exceeding five hundred dollars," the county courts of this State are not limited in the examination and allowance of claims against estates to claims of that amount, when proceeding under Section 1161, B. & C. Comp.

Executors—Consideration by County Court of Rejected Claim.

2. Section 1161, B. & C. Comp., is intended to afford a speedy and efficient means of determining the justness of claims against estates after their disallowance by the personal representatives, without the technical pleadings necessary in courts of law, and the proceedings should be equitable rather than legal.

Effect of Evidence.

3. The evidence in the case sustains the finding that the promissory notes constituting the claim in question were the obligations of the firm of Morgan & Stowell, and of each member thereof.

Executors—Limitations—Right to Sue on Rejected Claim.

4. A claim against an estate not being suable for six months from the appointment of a personal representative (B. & C. Comp. § 387), and not thereafter until it has been rejected, or a reasonable time allowed for so doing (B. & C. Comp. § 388), the statute of limitations is suspended during the time that a claim filed for allowance is being held without being rejected or allowed, and remains suspended until the personal representative acts on the claim.

Executors—Constitution—Probate Jurisdiction of County Courts.

5. Since the adoption of the Constitution of Oregon, Section 12 of Art. VII of which confers on county courts the "jurisdiction pertaining to probate courts," those courts have had jurisdiction to pass upon the validity of claims presented to but disallowed by executors or administrators. When the constitution was adopted the territorial courts were authorized by statute to settle such claims, and that authority was continued by the clause quoted.

Jurisdiction of County Court to Adjudicate Claim Presented by Assignee of Original Claimant.

6. Does the "claimant" mentioned in Section 1161, B. & C. Comp., which provides that after a claim has been presented to a personal representative and rejected "said claimant" may have an adjudication thereof by the county court, include an assignee of the claim who acquired his interest from the person who originally presented the claim after its presentation?

Presenting Claim—Waiving Matter in Abatement.

7. The objection that a claim against a decedent's estate was not presented by the proper person is a matter in abatement only, and is waived by joining issue on the merits.

Consideration of Evidence on Motion for Nonsuit.

8. As a motion for a nonsuit admits the truth of plaintiff's testimony, if there is any competent evidence tending to support the cause he is entitled to have it go to the jury.

From Multnomah: Arthur L. Frazer, Judge.

Statement by Mr. Justice Bean.

This proceeding was instituted in the county court, sitting for the transaction of probate business, to establish a claim against the estate of A. H. Morgan, deceased. Morgan and A. W. Stow-

ell formed a partnership in 1882, engaging in the retail grocery and feed business in the City of Portland, from time to time borrowing sundry moneys from the Commercial National Bank, the assignor of Wells, Fargo & Co. On or about October 1, 1888, they sold out their business, but did not dissolve their partnership, nor did the purchaser assume any of the liabilities of the firm, or the sale include its outstanding accounts or bills receivable. At the time of the sale Morgan & Stowell were indebted to the bank in the sum of $2,500, evidenced by a promissory note for that amount, signed by the firm name. This note was renewed from time to time, Morgan signing the firm name to the renewal in some instances and Stowell in others, until December 24, 1891, when the last renewal note was given, the firm name being signed by Stowell. The interest on this note was paid to March 24, 1894. On May 1, 1889, Morgan & Stowell borrowed or became indebted to the bank in the sum of $1,000, giving their promissory note therefor, which was likewise renewed from time to time until April 25, 1894, when the other note now in controversy was executed, the firm name being signed by Stowell. No payments have been made upon it. Morgan died March 3, 1897, and a few days thereafter his wife was appointed executrix of his estate. On April 22, 1897, the bank duly presented to the executrix for allowance a claim against the estate based on the two notes mentioned. The receipt of the claim was acknowledged by the attorney for the executrix, and the bank was assured that the claim would be "examined into and allowed or rejected in due course, of which you will be advised."

Mr. Morgan's estate consisted almost entirely of real property. The condition of the market was such at the time of his death that it was difficult to convert this real property into money, and the bank was indulgent, and did not press payment of its claim. Its officers, however, several times inquired of the attorney for the executrix about the matter, and were assured by him that the estate would ultimately pay all the claims against it, and leave something over, but were not advised that there was any doubt as to the validity of the claim or its allowance by the

executrix. Meanwhile, the Commercial National Bank sold and transferred its claim to Wells, Fargo & Co., which, in July, 1901, put it in the hands of its attorney for adjustment. Upon examining the records of the Morgan estate, the attorney found that the executrix had filed no list of claims presented as required by law, and had made no reports whatever of any of her transactions. He therefore inquired of her attorney concerning the condition of the estate, and was informed that the bank's claim had been rejected. This was the first knowledge either the bank or its assignee had of that fact. The notation of rejection on the claim bears no date, nor does the time thereof otherwise appear. Immediately on learning that the claim had been rejected, Wells, Fargo & Co. applied to the county court for its allowance under Section 1161, B. & C. Comp. The county court allowed the claim, but upon appeal to the circuit court a nonsuit was entered, and hence this appeal.                    REVERSED.

For appellant there was a brief over the name of *Platt & Platt,* with an oral argument by *Mr. Robert T. Platt.*

For respondent there was a brief over the names of *Ellis G. Hughes* and *Richard Williams,* with an oral argument by *Mr. Hughes.*

MR. JUSTICE BEAN delivered the opinion of the court.

There are three questions presented for our consideration: (1) Whether, under Section 1161, B. & C. Comp., the county court, sitting in the transaction of probate business, has jurisdiction to adjudicate and allow a claim for more than $500 against an estate; (2) whether the notes upon which the claim of the bank is based were in fact the obligations of the partnership of Morgan & Stowell; and (3) whether they are barred by the statute of limitations.

1. The constitution provides: "The county court shall have the jurisdiction pertaining to probate courts, * * and such civil jurisdiction, not exceeding the amount of value of five hundred dollars, * * as may be prescribed by law": Const. Or. Art. VII, § 12. It is argued that the examination and allowance of a claim against an estate under Section 1161 is the exercise by the county

court of civil, as distinguished from probate, jurisdiction, being, therefore, limited to claims which do not exceed $500. In our opinion, this view is erroneous. By the constitution county courts are vested with the jurisdiction pertaining to courts of probate, and the legislature is authorized to confer upon them limited civil and criminal jurisdiction. The two jurisdictions are, however, as separate and distinct as if conferred upon separate tribunals. While sitting in the transaction of probate business, the nature and jurisdiction of a county court must be sought in the general nature and jurisdiction of probate courts as they are known in the history of the English law and the jurisprudence of this country. The allowance or ordering the payment of claims against estates which are in process of administration has always been considered an appropriate subject for the jurisdiction of probate courts: 2 Woerner, Administration (2 ed.), § 391, et seq. In this country courts exercising such jurisdiction are often invested by statute with the power to hear and determine claims against the estates of deceased persons in a summary manner, without the formality of technical pleadings: 2 Woerner, Administration (2 ed.), § 391, et seq. Such is our statute. The subject-matter of Section 1161, B. & C. Comp., pertains exclusively to the administration of estates, and is clearly within the functions of a probate court.

2. The remedy there provided is not exclusive, but is intended to afford a speedy, efficient, and summary remedy to one who has a claim against an estate which has been rejected by the executor or administrator, without the necessity of technical pleadings or the observance of the formal proceedings required in an ordinary action: *Wilkes* v. *Cornelius,* 21 Or. 348 (28 Pac. 135) ; *Johnston* v. *Shofner,* 23 Or. 111 (31 Pac. 254) ; *Pruitt* v. *Muldrick,* 39 Or. 353 (65 Pac. 20). That the proceedings are to be regarded, for the purpose of trial, as an action at law, rather than a suit in equity (*Wilkes* v. *Cornelius,* 21 Or. 341, 23 Pac. 473), does not affect the question. From the nature of the case, the method of procedure usually provided for probate courts is more nearly conformable to proceedings in equity than in law. Such courts, however, do not have either original equitable or

common-law jurisdiction, and in the disposition of the business before them they observe and apply legal and equitable rules, as the case may require and the statute provide.

3. The second question is one of fact. There is sufficient evidence tending to show that the notes in question were the obligations of the firm of Morgan & Stowell to carry that question to the jury. Stowell testified that the consideration of the notes was money borrowed by the firm for the purpose of conducting its business and discharging its debts, and that the notes in question were given in renewal of previous obligations incurred with the knowledge, consent, and acquiescence of Morgan. Dooley, the assistant cashier of the bank, testified that he presented the particular notes in question to Morgan for payment, and Morgan said that he was unable to pay them at the time, but would take them up at some later date. The cash book of the firm of Morgan & Stowell, which was kept by Morgan, its entries being chiefly in his handwriting, shows the receipt of the consideration for the $1,000 note, and also the firm's payment from time to time of interest on that sum and on the $2,500 note. There was other evidence tending in the same direction, but this is sufficient for the present purpose.

4. The important and difficult question is whether this proceeding is barred by the statute of limitations. The $1,000 note is dated April 25, 1894, and the last payment on the $2,500 note was made March 24th of the same year. The proceeding was instituted in the county court on July 20, 1901, more than seven years thereafter, and is therefore barred unless the running of the statute of limitations was suspended from the time the plaintiff's claim was presented to the executrix until the bank was notified that it had been rejected. By Section 387, B. & C. Comp., an action cannot be maintained against an executor or administrator until the expiration of six months after the granting of letters testamentary or of administration, and by Section 388 such an action cannot be commenced until the claim of the plaintiff has been duly presented to the executor or administrator, and by him disallowed. Section 20, B. & C. Comp., provides that, when the commencement of an action is stayed by statutory

prohibition, the time of the continuance of such prohibition shall not be a part of the time limited for the commencement of the action. It seems, therefore, that the time a claimant is prohibited from commencing an action on his claim, either because the six months after the granting of letters testamentary or of administration have not expired or because the question of the allowance of the claim is pending before the executor and undecided, will not be deemed a part of the time limited for the commencement of the action thereon. During the first six months after the granting of letters one holding a claim against an estate, except possibly when it comes within the provisions of Section 18, is prohibited from suing thereon in any event; nor can he commence his action after the expiration of such time until the claim has been disallowed. He must, of course, present his claim before it is barred by the statute of limitations, otherwise the executor or administrator is not authorized to allow it: B. & C. Comp. § 1161. The statute cannot be tolled by a mere failure to present the claim. After it has been presented, however, the claimant is prohibited from suing thereon until it is disallowed, and the operation of the statute will be suspended during the time of such prohibition: *Blaskower* v. *Steel,* 23 Or. 106 (31 Pac. 253); *Nally* v. *McDonald,* 66 Cal. 530 (6 Pac. 390); 19 Am. & Eng. Enc. Law (2 ed.), 216.

The claim in this case was presented for allowance in April, 1897. It was not then barred by the statute of limitations. Until it was disallowed by the executrix, or until she had retained it a reasonable time without acting on it, no action could have been commenced by the claimant to recover thereon. During the time it was properly pending before the executrix, the cause of action was stayed by the statute, and therefore is not a part of the time limited by the general statute of limitations for the commencement of an action on the claim. An executor or administrator is entitled to a reasonable time after the presentation of a claim in which to examine it to ascertain whether he will allow or disallow it, but, unless he takes some action thereon within such time, the claimant, at his option, may treat the claim as disallowed, and act accordingly: *Goltra* v. *Penland,* 45 Or. 254 (77

Pac. 129). This right, however, is believed to be personal to the claimant, who may waive it, and permit the claim to remain in the hands of the executor for further consideration. If he does so, and it is afterwards rejected, the right to commence an action will date from the time of rejection, and not from the time the claimant might have elected to treat the claim as disallowed and commenced an action if he had so desired. The claim in suit was indorsed "disallowed," but the time when such indorsement was made is not stated. The notation is not dated, and there is no proof whatever on the subject. The statute provides that whenever a claim is disallowed by an executor or administrator he shall indorse thereon the words "Examined and rejected," with the date thereof, and sign the same officially (B. & C. Comp. § 1161), but whether, in such case, the claimant should be notified thereof, either personally or constructively, by the executor or administrator filing a proper report with the county court, as required by the statute, is not clear.

But however that may be, and whatever may be the rule in this regard in ordinary cases, we are of the opinion that under the facts of this particular case the executrix can not be permitted to insist that the claim was rejected by her prior to the time the bank or its assignee was advised of her action. When the claim was presented, the bank was advised in writing that it would be notified of the action of the executrix thereon as soon as had. Some seven or eight months later it was assured that the estate "would undoubtedly pay every dollar it owes," but it would be necessary to sell some of the real estate, which the executrix was endeavoring to do, but could not rush the matter without such a sacrifice as would be injurious not alone to the estate but to the creditors, and they were therefore requested, "in their own interests, to be patient." By these statements and promises and the conversations with the attorney of the estate the bank was lulled into security, and did not press the payment of its claim. Relying upon such promises and statements, and in view of the general condition of the estate, and its desire that the largest amount possible should be realized from the assets, it was indulgent, and the executrix ought not now be permitted to insist that its rights have been injuriously affected by some

secret action of hers in rejecting the claim. If it was to be rejected because not an obligation of the estate, the proper indorsement should have been made thereon, the bank advised by the return of the claim, or in some other manner, of the action of the executrix, so that it could have taken such steps as it might deem proper to protect its interests. This was not done, nor did the executrix file with the county court, as required by law, a report of the claims presented against the estate. On the contrary, the claim remained either in her possession or her attorney's, and it was not until the statute of limitations had run that the bank's assignee was advised that the claim had been rejected. We are of the opinion, therefore, that the time during which the claim was in the hands of the executrix for examination, without notifying the bank that it had been rejected, should not be taken as a part of the time limited by the statute for the commencement of the action thereon.

It follows that the judgment of the court below should be reversed, and it is so ordered.                REVERSED.

Decided 3 January, 1905.

ON MOTION FOR REHEARING.

MR. JUSTICE BEAN delivered the opinion of the court.

5. Counsel for the executrix has filed a petition for a rehearing, in which he discusses at great length and with singular learning and ability the jurisdiction of probate courts at common and civil law, for the purpose of showing that the court was mistaken in holding that at the time of the adoption of our constitution such courts had power and jurisdiction to hear and determine the validity of claims against an estate or a decedent which had been presented to and disallowed by an executor or administrator. The question is an interesting one, but it is not necessary to follow counsel in his examination of it to ascertain whether his conclusions are justified from an historical standpoint, or whether the court was in error in saying in the former opinion that the allowance or rejection of claims against estates in process of administration has always been considered a proper subject of probate jurisdiction. He admits in his petition that

the county court, sitting in probate, has, under the constitution, "full probate jurisdiction as it existed at the time the constitution was adopted." At the time of the adoption of the constitution the statute of the territory provided that claims against an estate should be presented to the administrator or executor for allowance, and, if rejected by him, the holder should bring a suit in the "proper court" against the executor or administrator within a specified time, or the claim should be barred (Laws, 1854-55, p. 357) ; and that the judge of probate should have and possess full powers and "original jurisdiction in all cases relating to the probate of wills," etc., "the hearing and determining of suits and other proceedings instituted against executors and administrators upon any demand against the estate of their testator or intestate" : Laws, 1854-55, p. 339. This statute is important in ascertaining the meaning of the phrase, "jurisdiction pertaining to probate courts," as used in Section 12, Art. VII, of the Constitution of Oregon, defining the jurisdiction of county courts, as it was used in that instrument in the sense in which it was generally understood and accepted at the time: *Adam* v. *Lewis,* 5 Sawy. 229 (1 Fed. Cas. 132). The statute was continued in force by Section 7 of Art. XVIII, of the Constitution of the State, until the law was changed in 1862: *Wright* v. *Young,* 6 Or. 87. At the time the constitution was adopted, therefore, the probate court had jurisdiction to hear and determine claims against an estate which had been presented to and rejected by the administrator. As a contrary position forms the basis of counsel's argument, the question need not be further pursued.

6. The next point made is first raised in the petition for the rehearing. It is that the county court was without jurisdiction, because the claim was not presented to it by the original claimant, but by an assignee, acquiring title after the claim had been presented to the executor for allowance. Section 1161, B. & C. Comp., provides, among other things: "If any executor or administrator shall refuse to allow any claim or demand against the deceased, after the same may have been exhibited to him in accordance with the provisions of this act, said claimant may present his claim to the county court for allowance, giving the

[16—46 Or.]

executor or administrator ten days' notice of such application to the court." Sections 27 and 393 provide that all actions or suits, except those specially enumerated, shall be prosecuted in the name of the real party in interest. As at present advised, we are of the opinion that under these statutes the claimant mentioned in Section 1161 includes an assignee or successor in interest of the person presenting the claim to the executor for allowance. This is in accordance with the principle running through our statute with relation to the commencement and prosecution of actions, suits, and proceedings.

· 7. However, this is not a question which can be raised in this court for the first time. The objection that the claim was not presented by the proper person is a matter in abatement only, and waived by joining issue on the merits without raising it in the county court: 10 Enc. Pl. & Pr. 10; *Hopwood* v. *Patterson,* 2 Or. 49; *Derkeny* v. *Belfils,* 4 Or. 258; *Chamberlain* v. *Hibbard,* 26 Or. 428 (38 Pac. 437).

8. The remainder of the petition is devoted to a lengthy and critical discussion of the evidence and the question of the statute of limitations. We do not understand the law as counsel seems to—that on a motion for nonsuit the court will determine the weight and sufficiency of the evidence. Such a motion admits the truth of plaintiff's testimony and every legitimate inference of fact which may be drawn from it. If there is any competent evidence tending to support the plaintiff's case, he is entitled to have it go to the jury. It is only when there is a total absence of testimony that the court can take the case from the jury: *Grant* v. *Baker,* 12 Or. 329 (7 Pac. 318); *Sovern* v. *Yoran,* 15 Or. 644 (15 Pac. 395); *Anderson* v. *North Pac. Lum. Co.* 21 Or. 281 (28 Pac. 5); *Herbert* v. *Dufur,* 23 Or. 462 (32 Pac. 302); *Brown* v. *Oregon Lumber Co.* 24 Or. 315 (33 Pac. 557); *Barr* v. *Rader,* 33 Or. 375 (54 Pac. 210); *Feldman* v. *McGuire,* 34 Or. 309 (55 Pac. 872); *Perkins* v. *McCullough,* 36 Or. 146 (59 Pac. 182); *Currey* v. *Butcher,* 37 Or. 380 (61 Pac. 631). As we stated in the original opinion, there was sufficient evidence tending to show that the notes in suit were executed for the indebtedness of Morgan & Stowell with the knowledge, consent, and acquiescence of Morgan, and that he afterwards ratified

and approved the same by the payment of interest thereon, and other acts recognizing the notes as valid obligations against him, to carry the case to the jury. It is useless to comment upon the testimony in detail. Its weight, sufficiency, and the credibility of the witnesses are all questions for a jury, and not for a court.

We think we have made our position clear on the statute of limitations, and do not deem it necessary to elaborate further. The petition is denied.        REVERSED: REHEARING DENIED.

---

Decided 3 January, 1905.