Argued June 2, decided July 14, rehearing denied August 4, 1908.

## MANNING v. PORTLAND SHIP BUILDING CO.

[96 Pac. 545.]

APPEAL AND ERROR — MOTION TO SET ASIDE VERDICT — NEW TRIAL — REVIEW.

1. A motion to set aside a verdict and grant a new trial, based on an insufficiency of the evidence, is addressed to the discretion of the court, the denial of which is not assignable as error on appeal.

SAME — MOTION FOR NONSUIT — SCOPE OF REVIEW.

2. Review of an assignment that the court erred in denying defendant's motion of a nonsuit in a personal injury case by a servant, involves only the question whether there was any evidence tending to establish negligence on defendant's part, as the cause of the injury.

MASTER AND SERVANT — INJURY TO SERVANT — ASSUMED RISK.

3. Where a servant was injured by a flying steel chip from an alleged defective chisel, the servant, while assuming the risk of the ordinary liability of a steel chisel to chip when hammered, did not assume the extraordinary risk of injury from the chipping of a defective chisel, negligently furnished by defendant.

SAME — BURDEN OF PROOF.

4. In an action for injuries to a servant by the chipping of an alleged defective chisel, the burden was on plaintiff to prove, not only that the chisel was defective, and that defendants had knowledge thereof, but that the defects were the proximate cause of the injuries.

SAME.

5. In a suit for injuries to a servant by a chip of steel from an alleged defective chisel, the burden is on defendant to show that plaintiff also knew of the defective condition of the tool at the time he attempted to use it, and appreciated the danger, and thus assumed the risk; plaintiff not being presumed to have assumed risks, which defendant might have avoided by ordinary care·

SAME — DEFECTIVE TOOLS — NEGLIGENCE OF MASTER.

6. Where a servant was injured by an alleged defective tool, the criterion for the determination of the master's negligence is whether the tool furnished on account of its defects, was apparently dangerous, and liable to produce injuries when used, and whether defendant had knowledge of the defective condition.

SAME — EVIDENCE — QUESTION FOR JURY.

7. In an action for injuries to a servant by the chipping of on alleged defective steel chisel, evidence *held*, to require submission to the jury of defendant's negligence in furnishing the servant with such defective chisel, and whether the defect was the proximate cause of the injury.

From Multnomah: ARTHUR L. FRAZER, Judge.

Statement by MR. JUSTICE EAKIN.

This is a personal injury case, in which William M. Manning, plaintiff, recovered a judgment against the Portland Steel Ship Building Co., and defendant appeals.

In September, 1906, the defendant was engaged in rebuilding the steamship, Geo. W. Elder. Plaintiff, with another workman, was employed by it, as an inexperienced laborer, in cutting off the heads of rivets by means of a steel chisel and sledge. The chisel is about 4 or 5 inches in length, and about 1¼ inches thick, having a groove around it near the top, in which is bent a ⅜-inch iron rod. The ends of the rod form a handle or tongs, about 15 inches long, with which to hold the chisel upon the rivet while being struck. At the time it was furnished to and used by the defendant, one prong of the tongs had been broken off, leaving the remaining rod to serve as a handle; and plaintiff claims the chisel was too loose in the eye of the prong to be held firmly. The chisel, being what is called a "side-set," beveled on one side so that it can be placed close to the plate, and thus enter behind the head of the rivet, is loose in the tongs, so that it will turn to any position, and is held with the tongs by one man while being struck by the other. The head of this chisel was very much battered and frayed at the top as the result of the hammering. While the helper, Cheeseman, was holding the chisel upon a rivet and plaintiff was striking it, the latter was struck in the eye by a small piece of steel, as plaintiff maintains, chipped off the chisel by the stroke, thus causing the loss of the eye. At the close of plaintiff's testimony the defendant moved for a nonsuit, which was denied by the court, and at the close of the trial plaintiff obtained verdict, and the defendant moved to set aside the verdict, and for a new trial, which was denied, and judgment was rendered for plaintiff upon the verdict.

                                        AFFIRMED.

For appellant there was a brief over the names of *Messrs. Coovert & Stapleton,* with an oral argument by *Mr. George W. Stapleton.*

For respondent there was a brief over the names of *Mr. Thomas O'Day* and *Mr. William W. Banks,* with an oral argument by *Mr. Banks.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. There are but two assignments of error: (1) In denying defendant's motion for judgment of nonsuit; (2) in denying defendant's motion to set aside the verdict and grant a new trial. Only the first assignment can be considered. A motion to set aside a verdict and grant a new trial, based upon insufficiency of the evidence, is addressed to the discretion of the court; and the denial of it is not assignable as error on appeal: *Crossen* v. *Oliver,* 41 Or. 505 (69 Pac. 308).

2. The consideration of the motion for nonsuit involves only the question whether there was any evidence before the jury tending to establish negligence on the part of the defendant as the cause of the injury. If there is any competent evidence upon that question, it must be submitted to the jury: *Morgan's Estate,* 46 Or. 233 (77 Pac. 608: 78 Pac. 1029).

3. If the cause of the injury was the ordinary risk of the employment, namely, the ordinary liability of a steel chisel to chip when hammered in the work of cutting rivets, then plaintiff is presumed to have assumed such risk, and defendant is not liable; but if the defense is that plaintiff assumed an extraordinary risk—such as arises from the use of defective tools negligently furnished by the defendant—then plaintiff is not presumed to have assumed the risk, and the burden is upon defendant to allege and prove it: *Tucker* v. *North Terminal Co.* 41 Or. 82 (68 Pac. 426).

4. The burden was on plaintiff to prove that the tools were defective, and that defendant had knowledge thereof, and that such defects were the proximate cause of the injury; and evidence thereof will make a case sufficient

to be submitted to the jury on the question of negligence. And whether plaintiff also knew of the defective condition of the tools and appreciated the danger, and thus assumed the risk, were matters which must be pleaded and proved by defendant. The plaintiff is presumed to have assumed the ordinary risks, but not such as defendant might have avoided by ordinary care: *Conlon* v. *Oregon S. L. Ry. Co.*, 23 Or. 499 (32 Pac. 397), 20 Am. & Eng. Enc. Law (2 ed.), 134; *Johnson* v. *Oregon S. L. Ry. Co.*, 23 Or. 94 (31 Pac. 283).

5. The question of the assumption of an extraordinary risk, namely, waiver of defendant's negligence, is not involved in the consideration of this motion, and it only remains for us to ascertain whether there is any evidence tending to establish the elements above named, viz., that the tools were defective, that defendant knew thereof, and that such defects were the proximate cause of the injury. Plaintiff's contention is that defendant was negligent in requiring him to work with defective tools, namely, a chisel with a battered and frayed head, and broken tongs by which it was held, and that, by reason of the battered condition of the chisel, the stroke of the hammer was liable to cause it to chip off, and, by reason of the defective handle, it was impossible to hold the chisel firmly, making it liable to turn under the hammer, and thus cause the edges to chip off, which he claims were the direct cause of the injury. The evidence establishes that the chisel was battered and frayed at the top, as the result of long use, and that one arm of the handle was broken off; and there was some evidence tending to show that the chisel was too loose in the eye of the handle, that it was liable, on that account, to turn when struck with the hammer, and that it did so turn. Cheeseman, plaintiff's helper, who held the chisel, says: "I never noticed in what condition it was. I know when he would strike it the first or second blow—I think the

second blow—that it turned.  I was holding it in that position, and I turned like that (indicating), and I took it away from the rivet head, and put it back on the rivet. I know when he hit it, it turned.  I didn't notice just how wobbly it was."  Dolan, a toolmaker, testifying as an expert, says of the defect in the tongs:  "If the helper is going to hit it, he is liable to turn it a little bit and chip the edges off.  It is impossible to hold it as well as if it had two handles on—he could hold it then and set it still—but if he moves it a little bit, the helper coming down with the sledge is likely to chip the corners off."  Bundschuh, an expert, testifying in regard to the battered condition of the head of the chisel, says:

"If it is battered down it will naturally chip off.

Q. Continual use will continue to batter it?

A. Yes, sir.

Q. The edges constantly and continually turning over?

A. Yes, sir.

Q. * * And then chip off?

A. Yes, sir.

Q. Or else you take them and knock them off?

A. Yes, sir.

Q. In hammering on a tool of this kind—say, we take this small cold-chisel upon which the rosette head appears —hitting the head squarely on top, when these pieces or fragments become so battered they fall off themselves, what is the usual direction of them?

A. That is hard telling; they are liable to fly in most every direction."

Caples, the custodian of the tools, says he notified the foreman of the defects in the tools; that the men were kicking about them; that the chisels were battered up, and the broken tongs, both before and after the accident; that he showed him the tool, and asked him what to do with it; also that after the tools become battered, they are re-dressed, and the heads made square again:

"The smith takes and heats them, and draws them up straight again.  Sometimes they sliver up when hit with the hammer.  It just simply is chipped out.

Q. On general use they are liable to be on any chisel, aren't they?

A. I think they are."

6. The criterion by which to determine whether the defendant was guilty of negligence, is, were the defective tools so furnished to plaintiff, on account of such defects, liable to produce injury when used; that is, were they apparently dangerous?: 20 Am. & Eng. Enc. Law (2 ed.) 92; *Morris* v. *Gleason*, 1 Ill. App. 510; *Little Rock, etc., R. Co.* v. *Duffey*, 35 Ark. 602; *Trinity County Lum. Co.* v. *Denham*, 85 Tex. 56 (19 S. W. 1012). If they were, and defendant knew of their defective condition, then the defendant was negligent, and the risk, on account of that condition, was an extraordinary one— that is, one that the plaintiff was not presumed to have assumed as incident to the employment—provided the injury was the result of the frayed condition of the chisel, or the unsteady manipulation of it by reason of the loose and broken condition of the tongs. The theory of the defense is that, even though the tools were defective, yet the evidence does not establish that such was directly the cause of the injury, but that the chipping of the piece of steel from the chisel or hammer was purely incidental—as liable to occur from the use of a perfect tool as from that used—and that the evidence does not point to these defects in the tools as the producing cause of the accident, on the theory that plaintiff cannot recover where it is merely a matter of conjecture, surmise, or speculation whether the injury was or was not due to the negligence of defendant. Labatt (Section 837) says that the servant cannot recover where it is merely conjectural whether the injury was or was not due to the negligence of the master. Since there is nothing more tangible to proceed upon than two or more conjectural theories, for one or more of which the master is not liable, it should not be submitted to the jury: See, also,

1 Shearman & Red. § 57; *Patton* v. *Texas & Pac. Ry. Co.* 179 U. S. 658 (21 Sup. Ct. 275: 45 L. Ed. 361). Although it may be doubtful, the negligence being established, whether it was the proximate cause of the injury, yet it may be established by circumstantial evidence; and, if the evidence tends more strongly to attribute the injury to that cause than to an ordinary incident, it must be submitted to the jury: Labatt, § 836; *Griffin* v. *Boston & A. Ry.* 148 Mass. 143 (19 N. E. 166: 1 L. R. A. 698: 12 Am. St. Rep. 526). As to the defective condition of the tools, it may well be left to the jury to say whether negligence on the part of the defendant is established; and although it is not established by direct and positive proof that the defect in the tools was the cause of the chipping of the chisel, yet there is evidence that fairly tends to that conclusion. Labatt, at Section 835, says: "This rule, however, does not imply that it is only from direct evidence that the master's culpability can be inferred. The burden of proof is satisfied by the production of circumstantial evidence." Again, at Section 836: "But while the plaintiff is bound to introduce evidence from which the jury may properly infer that the accident was caused by the defendant's negligence, he is not required to point out the particular act or omission which caused the accident. * * The necessary proximity of cause may, like the fact of the existence of the negligence alleged, be established by evidence of a merely circumstantial nature." Also Section 805: "Whether the breach of duty established in the given case was the proximate cause of the injury is a mixed question of law and fact. It is therefore a primary one for the jury to determine under proper instructions. A court will not undertake to settle it in any case where it involves the weighing of conflicting evidence, the balancing of probabilities, and the drawing of inferences." In *Whitney* v. *Clifford*, 57 Wis. 156, 158 (14 N. W. 927, 928)

it is held: "It is the ordinary action of negligence, and if from a preponderance of the evidence the jury were convinced that the fire and injury were traceable to such negligence on the part of the defendant, * * then the plaintiff was entitled to a verdict, notwithstanding the question was not free from reasonable doubt": *Atchison, T. & S. F. R. Co.* v. *Brassfield,* 51 Kan. 167 (32 Pac. 814); *Cincinnati, H. & D. R. Co.* v. *McMullen,* 117 Ind. 439 (20 N. E. 287: 10 Am. St. Rep. 67); Shearman & Red., at Section 58, states the law thus:

"The plaintiff is not bound to prove more than enough to raise a fair presumption of negligence on the part of the defendant and of resulting injury to himself. Having done this, he is entitled to recover, unless the defendant produces evidence sufficient to rebut this presumption. It has sometimes been held not sufficient for the plaintiff to establish a probability of the defendant's fault; but this is going too far. If the facts proved make it probable that the defendant violated his duty, it is for the jury to decide whether he did so or not; * * and, although the facts shown must be more consistent with the negligence of the defendant than with the absence of it, they need not be inconsistent with any other hypothesis. It is well settled that evidence of negligence need not be direct and positive."

7. The producing cause of the accident must be gathered from all the evidence and circumstances presented in the case, and the fact that it is not capable of demonstration does not preclude its consideration. There was evidence upon all of these questions, and they are exclusively for the jury. That the injury is attributable to the defects in the tools may as readily be established by circumstantial evidence and inferences as the negligence itself; and it is not for the court to determine the preponderance or weight of the evidence, but only whether there is evidence tending to establish that the negligence was the proximate cause of the injury. In *Little Rock, etc. R. Co.* v. *Duffey,* 35 Ark. 602, which involved the loss of an eye by a chip of steel from a steel

maul, the face of the maul was chipped a little, but its usefulness was not materially impaired; and it was held that the liability of the defendant did not depend upon whether the maul was defective, but upon the fact that it ought not, in its condition, to have been used about the work in which the plaintiff was engaged; that is, upon the fact that there was some apparent cause of danger in its continued use.   It is said:

"The question of negligence is a mixed one of law and fact, in the determination of which is to be considered whether an act has been done or omitted, and whether, also, the doing or omission of it was a breach of legal duty. * * It presented to the jury the question not only whether the accident was so produced, but also, if so, whether, under the circumstances, negligence could be imputed to the defendant."

The other necessary facts being found, defendant's liability depends upon whether the tools, on account of these defects, were apparently dangerous.   There was some evidence tending to establish that the tools were defective in the particulars mentioned, of which the defendant had knowledge, that plaintiff's eye was put out by a piece of steel chipped from the head of the chisel by a stroke of the hammer, and that it was occasioned, either by reason of the frayed condition of the top of the chisel, or the unsteady manipulation of it, by reason of the loose and broken condition of the tongs.   It is when the circumstances are such as to lead to the inference of negligence that they are to be submitted to the jury to see whether or not there was negligence: *Kincaid* v. *Oregon S. L. Ry. Co.* 22 Or. 35 (29 Pac. 3).   And if all these matters are found in favor of plaintiff, it was the province of the jury to determine therefrom whether defendant was negligent in furnishing such defective tools, and whether they were the proximate cause of the injury.   The motion for nonsuit was properly denied.

The judgment is affirmed.           AFFIRMED.