Argued September 4, decided September 16, rehearing denied
November 11, 1913.

## GYNTHER *v.* BROWN & McCABE.*

(134 Pac. 1186.)

**Pleading—General and Specific Allegations.**

1. Where both general and specific allegations are made respecting
the same matter, the latter control; and hence, if there is a general
charge of negligence, followed by a statement of the specific facts, the
facts specified govern the conclusion of negligence.

**Pleading—Construction—Sufficiency After Verdict.**

2. A complaint, in a stevedore's action to recover damages for in-
juries sustained by reason of the hoist engineer's failure to properly
carry out signals, alleged that, while plaintiff and his fellow-workmen
were undertaking to store stacks of lumber in the hold of a ship, the
engineer was notified to let go on the fall in order to loosen the chain
around the timber so that such chain might be shifted, and, instead
of letting go on the fall, the engineer carelessly and negligently went
ahead, and the timber was suddenly lifted off the block and shifted
against plaintiff. The complaint further charged that defendant sta-
tioned the engineer at too great a distance from the signalman; that
the signals given could not be and were not communicated with suffi-
cient promptness and accuracy; that the engineer, instead of letting
go on the fall as he was signaled to do, went forward through mistake
and confusion; and that the system of communication by means of sig-
nals was not at all times or at any time prompt, efficient and accurate.
*Held,* that the complaint was sufficient after verdict to sustain a re-
covery on the ground that plaintiff counted, not on the negligence of
the engineer, but on defendant's failure to provide a reasonably safe
method of signaling.

**Master and Servant—Injuries to Servant—Duty of Master.**

3. In an action for injuries to a servant by the master's failure to
supply reasonably safe tools and appliances, the burden of proof is on
the servant to show the negligence specified, and to prove facts in addi-
tion to the accident inconsistent with the exercise of due care.

[As to liability of employer for unsafe appliances, see notes in
77 Am. Dec. 218; 97 Am. St. Rep. 884; 98 Am. St. Rep. 289.]

**Master and Servant—Injuries to Servant—Defective Appliances—Sig-
naling System.**

4. In an action for injuries to a stevedore by being struck by a
timber in the hold of a vessel as it was moved in the wrong direction
by the hoist engineer, evidence *held* to authorize submission to the

---

*The authorities on the general question of the master's duty to
warn or instruct servant are collated in an extensive note in 14
L. R. A. 33.        REPORTER.

jury of the question whether the accident was caused by the master's negligence in failing to provide an efficient system of signaling from the hatch-tender to the engineer.

**Negligence—Existence—Proximate Cause—Circumstantial Evidence..**

5. The existence of negligence and the proximate cause of an injury may be established by circumstantial evidence.

[As to doctrine of proximate cause, see note in 36 Am. St. Rep. 807.]

**Master and Servant—Injuries to Servant—Negligence—Signal System—Evidence.**

6. Where an injury to a stevedore was alleged to have resulted from the master's negligence in failing to provide an efficient signal system between the hatch-tender and the engineer, evidence that the engineer was stationed at too great a distance to insure accurate conveyance of signals, and that on the day of and prior to the accident two or three mistakes were made by him in regard to signals, and that notice thereof was given to the foreman, but that no change had been made in the system thereafter, was properly admitted in connection with the limitation that the jury should only consider it to show that the system of signals maintained by defendant was defective, and that he might reasonably have anticipated the occurrence of the accident.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 2.    Statement by MR. JUSTICE McNARY.

This is an action by William Gynther against Brown & McCabe, a corporation, to recover damages for personal injuries sustained by plaintiff as a result of negligence alleged to have been occasioned by defendant's servants.    Plaintiff declares that at the time of the accident defendant, a corporation, was engaged as a stevedore in loading and storing away lumber in the ship "Marechal De Castris," which was berthed at a dock in the Willamette River at Linnton, Oregon; that plaintiff was employed by defendant to receive the lumber in the hold of the ship and to take the same from the ropes to which the lumber was attached and swung by means of pulleys and cables into the hold; that defendant, while loading the ship, had control, through its engineer, and was in possession of a donkey-engine upon a scow stationed on the inshore

side of the vessel at about the aft end of the forward rigging some 60 feet forward of the hatch through which the lumber was being received; that during the month of May, 1911, plaintiff, with other workmen, was employed by defendant, in the hold of the ship, to store away the lumber placed therein, and while so employed, defendant, through its servants, lowered a timber of large dimensions in the trunkway of the ship; that, while plaintiff and his fellow-workmen were undertaking to store the lumber, the engineer of the donkey-engine was notified to "let go" on the fall, in order to loosen the chain around the timber, but, instead of the engineer "letting go" on the fall, he carelessly and negligently went ahead, and as a consequence the timber was suddenly lifted off of the blocks, striking plaintiff violently on his body and pinning him between the timber and a ladder in the main hatch of the ship. The heart of the charge of neglect being that: "The injuries were particularly caused by the negligence of the defendant in not furnishing an engineer fit and competent to carry out the details of his work, and the carelessness and negligence of said engineer, the agent and servant of the defendant, in carelessly and negligently going ahead with the load and hoisting the same instead of letting go on the fall and load when signaled so to do; that the said defendant, its agents and servants, stationed the said donkey engineer at too great a distance and at such a location from the signalman or hatch-tender stationed at the hatch, that the signals given by the hatch-tender to the donkey engineer could not be and were not communicated with sufficient promptness and accuracy to said engineer, and thereby the said engineer, instead of letting go on the fall as he was signaled to do, went forward through mistake and confusion; and that the system of communication by means of signals was not

at all times or at any time prompt, efficient, and accurate.'' The answer of defendant contains the defenses of assumption of risk, contributory negligence, and the negligence of plaintiff's fellow-servant. The case was tried before a jury which returned a verdict in favor of the plaintiff for $12,485. The trial court overruled a motion to set aside the verdict, and defendant prosecutes this appeal.   Affirmed.

For appellant there was a brief over the names of *Griffith, Leiter & Allen, Mr. Ralph E. Moody* and *Mr. F. J. Lonergan,* with oral arguments by *Mr. Moody* and *Mr. Lonergan.*

For respondent there was a brief over the names of *Messrs. Giltner & Sewall, Mr. Ephraim B. Seabrook* and *Mr. R. R. Giltner,* with oral arguments by *Mr. Seabrook* and *Mr. Giltner.*

Mr. Justice McNary delivered the opinion of the court.

From testimony uncontradicted it appears: The defendant had stationed on the deck of the vessel, at a point near the hatch through which the timber was being lowered, a hatch-tender, whose office was to receive signals by word of mouth from the man in the hold and communicate these operating directions to the engineer of the donkey-engine, by means of a whistle signal. That at a time approximately synchronous with the mishap and while the timber was resting in the hold of the ship, a fellow-servant of plaintiff's in the hold signaled the hatch-tender to come back, who in turn blew two whistles, which was the signal to come back. This the engineer did. The plaintiff's fellow-servant called, ''Let go,'' whereupon the hatch-tender blew three whistles, which was the signal to ''let go.'' Instead of so doing, the engineer

hoisted the timber, causing the injury of which complaint is made. It also appears that one Frank Paul was in charge of the crew as foreman, and that the engineer of the donkey-engine was required to operate his engine in accordance with the signals given to him by the hatch-tender.

Counsel for defendant strongly contended the sole question involved is whether or not the engineer operating the donkey-engine was a fellow-servant of the plaintiff working in the hold of the vessel. At first blush, the pleadings seem to tender the issue upon that proposition; but, upon further reflection, urge counsel for plaintiff, the allegations in the complaint appear sufficient to predicate negligence upon an imperfect system of signaling employed by defendant. It is expressly disclaimed, in plaintiff's brief, that any substance is to be given to the averments that the injury sustained by plaintiff was occasioned alone by the negligence and unfitness of the engineer of the donkey-engine, but, to the contrary, was due to defendant's failure to establish a system of communication by means of signaling which was prompt and efficient, as required by the employers' liability law (L. O. L., p. xxxvi, § 5057A):

"And all machinery other than that operated by hand power shall, whenever necessary for the safety of persons employed in or about the same, or for the safety of the general public, be provided with a system of communication by means of signals, so that at all times there may be prompt and efficient communication between the employees or other persons and the operator of the motive power. * * "

Plaintiff having elected to abandon that part of his complaint which lays the accident exclusively at the door of the engineer of the donkey-engine, it becomes our duty to ascertain if the pleadings and proof are

sufficient to support the verdict upon theory of a defective signal system.

1. It must be borne in mind that, after verdict, all parts of a complaint are to be liberally construed together with a view of ascertaining the pleader's intention, and that the primary object is the trial, of cases upon their merits, so the rights of parties shall not be sacrificed to technical mistakes, omissions, and inaccuracies. Keeping before us this rule as our guidance, we will now proceed to resolve the complaint into its probative elements. Paragraph 6 contains, among other statements, the following: "That while said plaintiff and his fellow-workmen were undertaking to stow said sticks of lumber away in its proper place on board of said ship, said engineer was *notified* to let go on the fall in order to loosen the chain around the timber for the purpose of shifting the chain to the end of the timber; that, instead of said engineer's letting go on the fall as aforesaid, he carelessly and negligently went ahead, and the said timber was suddenly lifted off of said block, and it shifted back and struck the plaintiff violently upon his body, arms, and limbs, and pinned him between the end of said timber and a ladder in the after end of the main hatch of the ship. * * " This allegation, standing by itself and given a literal interpretation, plainly denotes that the engineer knew the character of the signal given to him, and that his failure to respond in accordance therewith was due to his carelessness or negligence, rather than to any defect in the system of communication by signals. This is the interpretation sought by counsel for the defendant, but this allegation, which is one of a general nature, needs be considered in conjunction with that which follows: "That the said defendant, its agents and servants, stationed the said donkey engineer at too great a distance and at such a

location from the signalman or hatch-tender stationed at the hatch, that the signals given by the hatch-tender to the donkey engineer could not be and were not communicated with sufficient promptness and accuracy to said engineer, and thereby the said engineer, instead of letting go on the fall as he was signaled to do, went forward through mistake and confusion; and that the system of communication by means of signals was not at all times or at any time prompt, efficient and accurate.'' The latter averment clearly indicates the pleader intended to use the word *"notify"* in the sense of *"signaled"*; that is, a signal was given to the engineer, rather than that the engineer was given notice of a certain signal. The rule in these cases being that, where both general and specific allegations are made respecting the same matter, the latter control, and, if there is a general charge of negligence followed by a statement of the specific facts, the specified facts govern: *Morton* v. *Wessinger,* 58 Or. 80 (113 Pac. 7, 8); 31 Cyc. 85.

2. This court on numerous occasions has stated, that, after a verdict or decree, the allegations of a pleading will be construed liberally in connection with one another, *in pari materia,* so that the pleader's intention may be ascertained. And when so determined that intention will control the actual language used: *Wyatt* v. *Wyatt,* 31 Or. 531 (49 Pac. 855); *Patterson* v. *Patterson,* 40 Or. 560 (67 Pac. 664); *Holmes* v. *Wolfard,* 47 Or. 93 (81 Pac. 819); *Pioneer Co.* v. *Farrin,* 55 Or. 590 (107 Pac. 456); *Lavery* v. *Arnold,* 36 Or. 84–89 (57 Pac. 906, 58 Pac. 524).

Inasmuch as no effort was made in the trial court to refine the pleadings or narrow the issues, we believe the complaint is sufficient after judgment, and states a cause of action upon the assumption that the defendant neglected to establish and maintain a sys-

tem of communication by means of signals calculated to insure prompt, efficient, and accurate results.

It is contended on behalf of the defendant that its motion for a nonsuit should have been granted, for the reasons: (1) That there was a failure of proof that defendant had not provided a prompt and efficient system of communication by means of signals; (2) because no inference of negligence could be expressly drawn under the proof; (3) because there was a total failure of competent proof that defendant's negligence, if any, was the approximate cause of the injury; (4) because the true cause of the accident under the proof rested wholly in surmise and conjecture.

3. This court has frequently recognized and given voice to the general rule that in an action for personal injuries, sustained by a servant in the employ of a master, and occasioned by the failure of the employer to supply reasonably safe tools and appliances, the load of proof is on the servant to show the negligence specified, and that he cannot rest his case upon facts as consistent with due care as negligence, and if the basis of the negligence is chargeable to an imperfect machine or appliance, to show, not only that the injuries resulted therefrom, but that the master had notice thereof, or by the employment of usual care could have known, and that mere proof of the accident is not sufficient: *Finn* v. *Oregon W. P. & Ry. Co.,* 51 Or. 66 (93 Pac. 690); *Manning* v. *Portland Shipbuilding Co.,* 52 Or. 101 (96 Pac. 545); *Kincaid* v. *Oregon Short Line Ry. Co.,* 22 Or. 35 (29 Pac. 3).

The theory of the defendant is that plaintiff has not brought his case within this rule, and that there is no testimony from which the jury could find that the signal system used by defendant was the approximate cause of plaintiff's injuries.

In *Manning* v. *Portland Shipbuilding Co.*, 52 Or. 101 (96 Pac. 545), Mr. Justice EAKIN well said: "Although it may be doubtful, the negligence being established, whether it was the proximate cause of the injury, yet it may be established by circumstantial evidence; and, if the evidence tends more strongly to attribute the injury to that cause than to an ordinary incident, it must be submitted to the jury."

If the engineer, having in charge the donkey-engine, misunderstood the signals given by the hatch-tender and replied to what he thought was the signal, then the system of signaling would be the approximate cause of the injury; but if the signal was correctly given and received, but not properly executed, the approximate cause of the mishap would attach to the negligence of the engineer rather than to the signal system. In cases where the approximate cause of the injury is questionable, the rule is that the case should be submitted to the jury: *Palmer* v. *Portland Ry. L. & P. Co.*, 56 Or. 262 (108 Pac. 211); *Elliff* v. *Oregon Ry. & Nav. Co.*, 53 Or. 66 (99 Pac. 76). Whether this doctrine is applicable depends upon the facts, which will be briefly reviewed.

4. At the hatch of the ship was stationed a hatch-tender, who gave signals by means of a small mouth whistle for the guidance of the engineer. The donkey-engine was stationed on a scow about 60 feet forward of the hatch. The engineer and the engine occupied a little house upon the scow. The motive power of the engine was steam. In the vicinity of the vessel was a sawmill in operation which made considerable noise, being less than two blocks distant. At the time of the casualty a strong wind was blowing in the direction of the signalman, and from the position occupied by the engineer. The engineer had complained he could not hear the signals, and which complaint had

been transmitted to the foreman.   The testimony further disclosed that the donkey-engine was about 20 feet below the deck of the vessel being loaded, that the engineer had misunderstood the signals several times at a period prior to the accident, and that the foreman had notice thereof.   No testimony was offered by the defendant save as to the extent of the injuries sustained by plaintiff.   From this testimony the jury might properly have inferred the accident was caused by defendant's negligence in not providing a system of communication, efficient and accurate, and that the lack thereof was the approximate cause of the injury.

5. The necessary approximate cause, as well as the existence of negligence, may be established by circumstantial evidence.   We think there was sufficient testimony to carry the case to the jury.

6. Complaint is made of the action of the trial court in admitting evidence of previous mistakes of the engineer in responding to the signals.   This testimony was elicited from the hatch-tender, and in substance is that he was stationed too far distant from the engineer to insure accurate conveyance of the signals; that on the day of and prior to the accident two or three mistakes were made by the engineer in regard to the signals, as when "the signal was to come back or go ahead, in place of coming back he (engineer) would go ahead, and in place of going ahead, he would come back"; that notice thereof was given to the foreman, and no change had been made in the system of signals after notice and up to the time plaintiff was injured.   In allowing the testimony to go to the jury, the court properly limited its application to the purposes of showing the system of signals maintained by defendant was defective and that defendant might reasonably have anticipated the occurrence of the accident.   Had the court admitted this evidence for

the purpose of establishing the negligence of defend-ant, a grave error would have been committed, but, as limited and by the authority of the case of *Galvin* v. *Brown & McCabe,* 53 Or. 598 (101 Pac. 671), we think no error was committed.

For the reasons herein stated our conviction is the judgment should be affirmed, and it is so ordered.

AFFIRMED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BEAN and MR. JUSTICE EAKIN concur.