ACCEPTED
14-DCV-218252
FIRST COURT OF APPEALS
HOUSTON, TEXAS
12/29/2014 9:47:43 AM
CHRISTOPHER PRINE
CLERK

## NO. 01-14-01018-CV

**IN THE COURT OF APPEALS**
**FOR THE FIRST DISTRICT OF TEXAS**
**HOUSTON, TEXAS**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
12/29/2014 9:47:43 AM
CHRISTOPHER A. PRINE
Clerk

**RICKY D. PARKER AND JAMES MYERS**
*Appellant*

**v.**

**SCHLUMBERGER TECHNOLOGY CORPORATION**
*Appellee*

Interlocutory Appeal
from the 268th Judicial District Court of Fort Bend County, Texas
Cause No. 14-DCV-218252

## EMERGENCY MOTION TO STAY TRIAL COURT ORDER

Levon G. Hovnatanian
State Bar No. 10059825
*hovnatanian@mdjwlaw.com*
Kevin G. Cain
State Bar No. 24012371
*cain@mdjwlaw.com*
W. Jackson Wisdom
State Bar No. 21804025
*wisdom@mdjwlaw.com*
James M. Cleary
State Bar No. 00783838
*cleary@mdjwlaw.com*
MARTIN, DISIERE, JEFFERSON &
WISDOM, L.L.P.
808 Travis, 20TH Floor
Houston, Texas 77002
(713) 632-1700 – Telephone
(713) 222-0101 – Facsimile

1

**TO THE HONORABLE COURT OF APPEALS:**

On December 10, 2014, Judge Brady G. Elliott denied Defendants' Motion to Compel Arbitration. *See* attached Appendix A. On December 18, 2014, Judge Brady G. Elliot granted Plaintiffs' Application for Temporary Injunction. *See* attached Appendix B. Defendants have a filed a notice of interlocutory appeal with this Court. However, during the pendency of this appeal, Defendants seek from this Court emergency interim relief from the Temporary Injunction Order and the denial of the Motion to Compel Arbitration.

During the pendency of an appeal, this Court is authorized to grant temporary relief. Tex. R. App. P. 10. Defendants seek to stay the portion of the Temporary Injunction Order prohibiting Defendants from working, the portion of the Temporary Injunction Order setting the trial for March 17, 2015, and other discovery instruments pending a ruling on the merits.

On September 9, 2011, Ricky Parker ("Parker") and Parker Energy Services Company (now known as Parker Close Out Company) entered into the Asset Purchase Agreement ("APA") with Production Wireline and Cased Hole Services Group, LLC.[1] Schlumberger is the successor-in-interest, by merger, of Production

---

[1] The APA was admitted at the temporary injunction hearing. However, it was admitted under seal, and therefore, is not attached to this motion. The APA will be a part of the record filed with this Court.

2

Wireline and Cased Hole Services Group, LLC. Accordingly, Schlumberger is bound by the APA.

The APA specifically provides that "any controversy, dispute or claim arising under or in connection with this Agreement (including, without limitation, the existence, validity, interpretation or breach hereof or and any claim based upon contract, tort o[r] statute) shall be resolved by binding arbitration, to be held in Houston, Texas pursuant to the Federal Arbitration Act and in accordance with the prevailing Commercial Rules of the American Arbitration Association." The "controversy, dispute [and] claim[s]" which are the subject matter of the Appellee's Petition, arose, at least in part, under or in connection with the APA. Some of the claims asserted by Schlumberger in the Petition have also been asserted by Schlumberger as a breach of the APA, in a demand letter dated October 29, 2014 ("Demand Letter") sent by Schlumberger to Parker Company and Parker. *See* attached Appendix C. The Demand Letter also references James Myers and the alleged conduct of Myers which is the subject matter of the Petition. The Demand Letter references the APA no less than seventeen times and alleged violations of the APA. *Id.*

Parker was the sole stockholder of Parker Energy Services Company, the Seller pursuant to the APA. Parker was also an officer, director and employee of Parker Energy Services Company. Myers was an employee of Parker Energy

3

Services Company. Parker and Myers are within the definition of "Person" contained in the APA and Myers is within the definition of "Affiliate" contained in the APA. *Id.* Parker and Myers became employees of Schlumberger after the closing of the transaction which was the subject matter of the APA.

Pursuant to the APA, Schlumberger's predecessor-in-interest acquired the assets of Parker Energy Services Company. Those assets included tangible personal property and intellectual property. Schlumberger now claims that certain tangible personal property was not delivered as required by the APA. *See* attached Appendix D.

The APA also included certain non-competition, non-solicitation and confidentiality provisions. Schlumberger alleges that these provisions have been breached. A provision of the APA required Myers to sign a Retention Bonus Contract and an Intellectual Property, Confidential Information and Non-Compete Agreement ("ICN Agreement"). *Id.* The Retention Bonus Contract and the ICN Agreement were signed on September 10, 2011. The Retention Bonus Contact and the ICN Agreement contained non-competition, non-solicitation and confidentiality provisions that were substantially similar to those contained in the APA. The Retention Bonus Contract and ICN Agreements are the subject matter of the Appellee's Petition. *See* attached Appendix D. And, the Retention Bonus

4

Contract and ICN Agreements are referred to in the Demand Letter. *See* attached Appendix C.

In the Petition, Schlumberger claims that Parker tortiously interfered with the Retention Bonus Contract and ICN Agreement between Schlumberger and Myers. *See* attached Appendix D. Also, in the Petition, Schlumberger claims that Parker and Myers, tortiously interfered with Schlumberger's prospective business relations. *Id.* Schlumberger further claims that Myers breached a fiduciary duty owed to Schlumberger and that Parker aided and abetted the breach of that fiduciary duty. *Id.* Schlumberger, further claims in the Petition that Myers breached the Retention Bonus Contract and ICN Agreement and that Parker breached the ICN Agreement. *Id.* In the Demand Letter, Schlumberger demanded that Parker Company, Parker and Myers comply with the "obligations under [the] agreements . . . signed which were referenced in the APA." *See* attached Appendix C. These "agreements" were the Retention Bonus Contract and ICN Agreement.

On October 29, 2014, Schlumberger sent the Demand Letter to Parker Company and Parker alleging breaches of the APA by Parker Company, Parker and Myers. *See* attached Appendix C. In the letter, Schlumberger demanded that Parker Company, Parker and Myers take certain action to cure the alleged breaches of the APA. *Id.* And, in the letter, Schlumberger stated "if you fail to cure the breaches of the [APA], the likely next step will be to proceed to arbitration under

Section 12.3 of the [APA]." *Id.* So, Parker Company, Parker and Myers took the "next step" and initiated the Arbitration.

At the hearing on Defendants' Motion to Compel Arbitration, the trial court stated that he usually sets this kind of cases six months after granting a temporary injunction. However, the unfounded Temporary Injunction Order set the trial for this case less than three months from the date of signing the Temporary Injunction Order. Appendix B. As such, because of the trial court's unexplained effort to hastily push this trial through, there is a sense of urgency to this already expedited appeal.

The order granting Schlumberger's request for a temporary injunction prohibits Parker and Myers from the following:

6. Enjoined Parties shall not directly or indirectly work for, or assist (whether as an owner, employee, consultant, contractor or otherwise) any business or commercial operation of wireline, slick line and braided line operations in the counties set forth in Plaintiff's Exhibit 74 which is attached.
7. Enjoined Parties shall not solicit, contact, or accept wireline, slick line or braided line work and/or services, from the Established Customers of Schlumberger in the states of Oklahoma, Texas, Arkansas, Kansas, Pennsylvania, and Louisiana.
8. Enjoined Parties shall not provide, or supervise, advise, manage or serve as a consultant for businesses who are performing wireline, slick line or braided line work for the Established Customers of Schlumberger in the states of Oklahoma, Texas, Arkansas, Kansas, Pennsylvania and Louisiana.

*See* attached Appendix B. This order effectively prevents Parker and Myers from working and making a living. It is onerous and burdensome.

The claims asserted by Schlumberger in the Petition involve some, if not all, of the factual allegations made in the Demand Letter. *See* attached Appendix C, D. The claims asserted by Schlumberger against Myers, pursuant to the Retention Bonus Contract and ICN Agreement, and against Parker, pursuant to the ICN Agreement, involve some, if not all, of the same factual allegations found in Schlumberger's October 29, 2014 letter. *Id.* The factual allegations and claims asserted in the Petition are intertwined with those asserted in the Demand Letter and which are involved in the Arbitration. *Id.* Most, if not all, of the claims asserted in the Petition arise under or in connection with the APA. *See* attached Appendix D.

The APA incorporates the Commercial Arbitration Rules of the American Arbitration Association ("Rule" or "Rules"). As a result, Schlumberger agreed to allow the arbitrator to resolve questions of arbitrability, and has in fact, litigated to ensure that the arbitrator retains this right. *See Schlumberger Technology Corporation v. Baker Hughes Incorporated*, 355 S.W. 3d 791, 802-803 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (incorporation of Rules is clear and unmistakable evidence of intent to allow arbitrator to decide arbitrability issues) (citing *Burlington Res. Oil & Gas Co. v. San Juan Basin Royalty Trust*, 249 S.W. 34, 4041 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) and *Haddock v. Quinn*, 287 S.W.3d 158, 172 (Tex. App.—Fort Worth, 2009, pet denied). AAA

Rule 7(a) provides that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections, with respect to the existence, scope or validity of the arbitration agreement." *Schlumberger*, 355 S.W.3d at 803.

The trial court took away the arbitrator's decision of arbitrability and denied the motion to compel arbitration while trying to rush through a trial date. This Court will address these substantive issues on appeal. However, during the pendency of this appeal, Parker and Myers seek a stay of the trial date and the discovery ongoing at this time. The trial date is a rush date that the parties should not be compelled to prepare for when these matters should be resolved in arbitration. Furthermore, discovery and rulings on discovery issues should be conducted before the arbitrator. As such, it would be a waste of time and resources to conduct discovery before the trial court now.

Parker and Myers also seek a stay of the Temporary Injunction Order to the extent that it prevents them from working and making a living. The Temporary Injunction Order effectively prevents Parker and Myers from working and in essence relegates them to sitting on a couch at home. As such, during the short time that this Court is considering the interlocutory appeal, Parker and Myers would ask this Court for a stay of the Temporary Injunction Order paragraphs 6 through 8 and allow them to return to work.

## CONCLUSION AND PRAYER

Accordingly, Parker and Myers ask this Court to enter an order to stay the trial date and ongoing discovery before the trial court while this interlocutory appeal is under consideration. Furthermore, Parker and Myers ask this Court to enter an order to stay paragraphs 6 through 8 of the Temporary Injunction Order allowing Parker and Myers to return to work while this interlocutory appeal is pending before this Court.

Respectfully submitted,

MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.

By: */s/ Kevin G. Cain*
    Levon G. Hovnatanian
    State Bar No. 10059825
    *hovnatanian@mdjwlaw.com*
    Kevin G. Cain
    State Bar No. 24012371
    *cain@mdjwlaw.com*
    W. Jackson Wisdom
    State Bar No. 21804025
    *wisdom@mdjwlaw.com*
    James M. Cleary
    State Bar No. 00783838
    *cleary@mdjwlaw.com*
808 Travis, Suite 20th Floor
Houston, Texas 77002
(713) 632-1700 – Telephone
(713) 222-0101 – Facsimile

ATTORNEYS FOR APPELLANTS
RICKY D. PARKER AND JAMES MYERS

## CERTIFICATION

The undersigned has reviewed the Emergency Motion To Stay Trial Court Order and concluded that every factual statement in the petition is supported by competent evidence included in the appendix or record. All documents attached as an appendix to this motion will be included in the clerk's record.

*/s/ Kevin G. Cain*
Kevin G. Cain

## CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. P. 52.10(a)/CERTIFICATE OF CONFERENCE

This is to certify that appellants have notified all parties by e-mail that this motion for temporary relief has been or will be filed. Counsel for appellee is opposed.

*/s/ Kevin G. Cain*
Kevin G. Cain

## CERTIFICATE OF COMPLIANCE

This is to certify that this computer-generated Emergency Motion To Stay Trial Court Order contains 1,653 words.

*/s/ Kevin G. Cain*
Kevin G. Cain

Dated: December 29, 2014

## CERTIFICATE OF CONFERENCE

Counsel for Appellant has conferred with counsel for Appellee on December 23, 2014, and Appellee is opposed to this motion.

*/s/ Kevin G. Cain*
Kevin G. Cain

## CERTIFICATE OF SERVICE

I hereby certify that on this December 29, 2014, a true and correct copy of the Emergency Motion To Stay Trial Court Order was sent by the method indicated to the following individuals:

Jeff Barnes                    *Via Email:  barnesj@jacksonlewis.com*
JACKSON LEWIS P.C.
1415 Louisiana, Suite 3325
Houston, Texas 77002

Mr. William L. Davis          *Via Email:  davisw@jacksonlewis.com*
Jackson Lewis, P.C.
500 N. Akard, Suite 2500
Dallas, Texas 75201

*/s/ Kevin G. Cain*
Kevin G. Cain

# Appendix A

14-DCV-218252
ORDER
Order
3336230

Filed
12/10/2014 2:35:48 PM
Annie Rebecca Elliott
District Clerk
Fort Bend County, Texas
Dannay Mascorro

## CAUSE NO. 14-DCV-218252

| | | |
|---|---|---|
| SCHLUMBERGER TECHNOLOGY CORPORATION, *Plaintiff,* | § § § § | IN THE DISTRICT COURT OF |
| v. | § § § | FORT BEND COUNTY, TEXAS |
| RICKY D. PARKER and JAMES MYERS, *Defendants.* | § § | 268TH JUDICIAL DISTRICT |

### ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION

On December 5, 2014, came on before the Court Defendants' Motion to Compel Arbitration. The Court, having considered the motion, Plaintiff's response, the argument of counsel, and all other pleadings and evidence before it, finds that any claims arising under the Asset Purchase Agreement among Production Wireline and Cased Hole Services Group, LLC ("PWCHSG"), Parker Energy Services Company and Ricky D. Parker ("Parker") dated as of September 9, 2011 ("APA") must be arbitrated. The Court finds, however, that Plaintiff in this action is not bringing any claims against the Defendants under the APA. The Court also finds that any claims brought under the following agreements are not arbitrable: (a) the Intellectual Property, Confidential Information and Non-Compete Agreement between Plaintiff and Parker dated September 10, 2011, (b) the Intellectual Property, Confidential Information and Non-Compete Agreement between Plaintiff and James Myers ("Myers") dated September 10, 2011, and (c) the Retention Bonus Contract between PWCHSG and Myers dated September 15, 2011. In sum, the Court finds that Defendants' Motion to Compel Arbitration should be DENIED.

SIGNED THIS _18_ day of _December_ 2014.

_____
PRESIDING JUDGE

ROUTED TO COURT
RTD TO D. CLERK
12 11 14 AW

Annie Rebecca Elliott, District Clerk of Fort Bend County, Texas, do hereby certify that the foregoing is a true, correct and full copy of the instrument herein set out as appears of record in the District Court of Fort Bend County, Texas. This 12 day of December 20 14

ANNIE REBECCA ELLIOTT, DISTRICT CLERK

By _____ Deputy
Vanessa Vanquez

# Appendix B

14-DCV-219252
TRO
Temporary Restraining Order
9245767



CAUSE NO. 14-DCV-218252

| | | |
|---|---|---|
| SCHLUMBERGER TECHNOLOGY CORPORATION, | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § § | |
| v. | § § | FORT BEND COUNTY, TEXAS |
| RICKY D. PARKER and JAMES MYERS, | § § | |
| Defendants. | § | _2608th_ JUDICIAL DISTRICT |

## TEMPORARY RESTRAINING ORDER

On this day, all legal prerequisites having been complied with came on for hearing Plaintiff Schlumberger Technology Corporation's Verified Application for Temporary Restraining Order against Defendants Ricky D. Parker and James Myers. Plaintiff appeared by and through its attorneys of record. The hearing was held without notice to Defendants because immediate and irreparable injury, loss and further damage will result to Plaintiff before notice can be served and a hearing held.

Based on the Court's review of the Verified Application for Temporary Restraining Order and the argument of counsel for Plaintiff, the Court finds that the evidence establishes the elements necessary for the issuance of a temporary restraining order. Ricky Parker sold the assets of his business to Schlumberger. In connection with the sale, he was on notice that Defendant James Myers was required to sign a Retention Bonus Agreement at issue in this lawsuit. As part of the sale, Parker and Myers also entered into Intellectual Property, Confidential Information, and Non-Compete Agreement with Schlumberger (the "ICN Agreement"). The ICN Agreements contain detailed and specific definitions of Confidential Information. Ricky Parker and James Myers agreed that they would not remove any Confidential Information from Schlumberger, that they would deliver all Confidential



Information to Schlumberger upon request, or upon termination of their employment, and that they would make available to Schlumberger all data storage devices which contained Confidential Information. The ICN Agreements further provide that Ricky Parker and James Myers will not disclose or use any Confidential Information after their employment with Schlumberger ended. The ICN Agreements further provide that while employed by Schlumberger, and for a period of one year after their employment with Schlumberger ended, they would not directly or indirectly work for or assist, (whether as an owner, employee, consultant, contractor or otherwise) any business or commercial operation whose business is in direct or indirect competition with the area of Schlumberger's business in which they were employed. James Myers and Ricky Parker had management responsibilities over wireline, slick line and braided line operations in Oklahoma, Arkansas, Kansas, and Pennsylvania. Parker also had management responsibilities over Texas and Louisiana. The one-year restriction provides for an extension of time while they were breaching the restrictions. The agreements further provide that they could request a waiver of certain restrictions if they did so in writing 45 days prior to starting employment for which they were seeking a waiver. They never requested a waiver.

The ICN Agreements further provide that they would not directly or indirectly recruit, hire, solicit or assist others in recruiting, hiring, or soliciting employees of Schlumberger. Schlumberger is only seeking to enforce this restriction with respect to employees of the Parker Energy Services and Production Wireline business (which provided wireline, slick line and braided line services) for which they worked prior to their resignation. The restrictions contained in the ICN Agreements are reasonable.



2

James Myers signed a Retention Bonus Contract with Production Wireline and Cased Hole Services Group, LLC (the "Myers Retention Agreement"). Pursuant to the terms of the Retention Bonus Agreement, Myers was paid money in connection with the sale of the business and his agreement to remain employed for a period of two years after he signed the agreement. He also agreed not to use or disclose Confidential Information, and return all documents, email communications, computer data and other Company materials, whether or not they contain Confidential Information, upon the separation from employment with the Company or upon request. Myers further agreed that during his employment with Schlumberger and for a period of one year after his employment ended, he would not:

(a)     Solicit, contact, or accept work, which was the same or substantially similar to the work and/or services performed by him for the Company, from clients of the Company with whom he had business dealings during his employment with the Company.

(b)     Solicit, recruit, encourage, hire or assist any other person or entity to solicit, recruit, encourage or hire for employment any employee or independent contractor of the Company to work for a competitor.

(c)     Directly or indirectly own, manage, operate, control, be employed by, be a consultant for, or perform any job functions for, any business that is in competition with the Company.

The Court finds that these restrictions are reasonable.

Ricky Parker resigned from Schlumberger on October 2, 2013. He began breaching his ICN agreement within the one year following his resignation. He formed a competing business, PWL LLC, on April 7, 2014. He purchased trucks for use in the competing business and began to publish photos of the trucks using social media indicating his readiness to



3

service clients. Schlumberger confronted James Myers regarding what he knew about the competing business and he claimed to have no knowledge, and also confirmed that he would not go to work for the competing business. Contrary to his representations, James Myers was recruiting Schlumberger's employees to go to work for the competing business. Ricky Parker took delivery of the trucks and began having Schlumberger employees, while still employed by Schlumberger and during working hours, come to the new business location. GPS tracking has confirmed that they were driving Schlumberger vehicles while at the competing business.

James Myers also began going to the new business location, while still employed by Schlumberger, during business hours. He was also using a Schlumberger vehicle. He also worked with Parker to obtain offers of employment for Schlumberger employees and set up a meeting with Schlumberger employees to present the offers. On September 16, 2014, with offer letters in hand, and the meeting set up, James Myers tendered his resignation to Schlumberger, shortly before the meeting with the Schlumberger employees to whom offers were going to be made. The terms of the offers required the Schlumberger employees to immediately resign with no notice. Ricky Parker and James Myers' intent in having Schlumberger employees resign with no notice was to have them all leave en masse so that Schlumberger would be unable to service customers. Ricky Parker and James Myers would then offer the services of their new company to the Schlumberger customers.

James Myers informed Schlumberger that he was retiring. He did not retire and has continued working for Parker's new business. He solicited a Schlumberger's customer. He did so after orchestrating the resignation of a number of Schlumberger employees, ostensibly to be able to tell the customer that Schlumberger no longer had enough employees to service the customer's business.



While still employed by Schlumberger, James Myers was telling Schlumberger customers and sales representatives that Schlumberger could not take on new work. Another customer was solicited and made the decision to move its business because Myers and Parker had hired away the employees the customer wanted working its wells. The breaches, both during Myers' employment and during the one-year non-compete period of Myers' and Parker's ICN Agreements, were intended to divert the business to the new business operated by Myers and Parker. Further, the business name used by them, "PW" and "Professional Wireline" is similar to the name used by Schlumberger – Production Wireline.

Schlumberger took reasonable steps to protect its confidential information. Among other things, employees must agree to the Business Ethics Policy, Confidentiality and Information Security Policy, Conflict of Interest Policy, Data Privacy and Protection Policy, Intellectual Property Policy, and the Non-Disclosure Agreement. Computers are also password protected and access to confidential information is restricted. In addition to these policies, employees sign the above-referenced agreements. Schlumberger has attempted to prevent employees from using its confidential information for personal gain, or disclosing it to third parties.

Both Ricky Parker and James Myers were in management roles at Schlumberger and also had extensive contact with Schlumberger customers. They had extensive access to, and used, Confidential Information as defined in the agreements at issue. Access and use was necessary for them to secure business for Schlumberger, staff the jobs, and service the customers. They also visited customers, learned their business needs and preferences, and communicated with other Schlumberger managers and sales representative regarding strategies



5

for developing business. They were both the beneficiaries of the goodwill Schlumberger developed with existing customers.

The Court concludes that it is probable that Defendants have breached their common law duties and agreements with Schlumberger, and that it is probable that Defendants will continue to breach their agreements unless immediately restrained.

The Court further finds that immediate and irreparable injury, loss, or damage will result to Plaintiff before notice can be served and a hearing held unless Defendants are immediately restrained.

It is, therefore ORDERED, ADJUDGED, and DECREED that James Myers and Ricky Parker, their employer, employees, agents, representatives and/or affiliated and related entities acting in active concert with them who receive actual or constructive notice of this Order be restrained and enjoined from:

(a) Retaining, concealing, moving, or sharing with others any of Schlumberger's equipment, property, documents, reports, files, books, records, or Confidential Information.

(b) Deleting or destroying any Confidential Information contained on any computer, phone, disc, data storage device, email account, or cloud storage.

(c) Failing to provide to Schlumberger, as required by paragraph 4 of the ICN Agreements, access to computers or other electronic data storage devices containing Company Confidential Information;

(d) Directly or indirectly working for, or assisting (whether as an owner, employee, consultant, contractor or otherwise) any business or commercial operations of



6

wireline, slick line and braided line operations in Oklahoma, Arkansas, Kansas, Pennsylvania, Texas or Louisiana;

(e)     Disclosing Confidential Information to any third party;

(f)     Using Schlumberger's Confidential Information;

(g)     Directly or indirectly recruit, hire, solicit or assist others in recruiting, hiring, or soliciting employees of Schlumberger who worked in the Parker Energy Services and Production Wireline business (which provided wireline, slick line and braided line services); and

(h)     Soliciting, contacting, or accept working, which was the same or substantially similar to the work and/or services performed by them for Schlumberger, from clients of Schlumberger with whom they had business dealings during their employment with Schlumberger.

This Order will remain in effect until the date of the hearing set below, not to exceed fourteen (14) days after the entry of this Order unless further ordered by this Court.

IT IS FURTHER ORDERED that Plaintiff and Defendants shall appear before this honorable Court on October 24, 2014, at 9:00 o'clock, a.m., in the courtroom of the above named district court of Fort Bend County, Texas, to then and there show cause, if any, why a temporary injunction should not be issued enjoining Defendants from engaging in the activities described above.

The CLERK of this court IS DIRECTED to issue a show cause notice to Defendants to appear at this temporary injunction hearing.



7

IT IS FURTHER ORDERED that before the clerk issues this temporary restraining order, Plaintiff shall execute and file with the clerk of the Court a bond or deposit of cash or check in conformity with the law in the amount of $_5,000.00_

IT IS FURTHER ORDERED that the clerk of this Court, after approving the bond executed and filed by Plaintiff, shall issue a temporary restraining order in conformity with the laws and the terms of this Order.

SIGNED on this __9__ day of October ____, 2014, at 11:05 o'clock _a_ m.

_____
JUDGE PRESIDING

I, Annie Rebecca Elliott, District Clerk of Fort Bend County, Texas, do hereby certify that the foregoing is a true, correct and full copy of the instrument herein set out as appears of record in the District Court of Fort Bend County, Texas. This __10__ day of __OCTOBER__, 20_14_

ANNIE REBECCA ELLIOTT, DISTRICT CLERK

_Dannay Mascorro_
DANNAY MASCORRO

8

FILED

OCT 0 8 2014

AT __5:06__ P.M.

Clerk District Court, Fort Bend Co., TX

# Appendix C



# jackson|lewis

Attorneys at Law

Representing Management Exclusively in Workplace Law and Related Litigation

| | | | |
|---|---|---|---|
| Jackson Lewis P.C. | ALBANY, NY | GRAND RAPIDS, MI | NAPA, CA | RALEIGH-DURHAM, NC |
| 500 North Akard | ALBUQUERQUE, NM | GREENVILLE, SC | NEW ORLEANS, LA | RAPID CITY, SD |
| Suite 2500 | ATLANTA, GA | HARTFORD, CT | NEW YORK, NY | RICHMOND, VA |
| Dallas, Texas 75201 | AUSTIN, TX | HOUSTON, TX | NORFOLK, VA | SACRAMENTO, CA |
| Tel 214 520-2400 | BALTIMORE, MD | INDIANAPOLIS, IN | OMAHA, NE | SAINT LOUIS, MO |
| Fax 214 520-2008 | BIRMINGHAM, AL | JACKSONVILLE, FL | ORANGE COUNTY, CA | SAN DIEGO, CA |
| www.jacksonlewis.com | BOSTON, MA | LAS VEGAS, NV | ORLANDO, FL | SAN FRANCISCO, CA |
| | CHICAGO, IL | LONG ISLAND, NY | OVERLAND PARK, KS | SAN JUAN, PR |
| | CINCINNATI, OH | LOS ANGELES, CA | PHILADELPHIA, PA | SEATTLE, WA |
| | CLEVELAND, OH | MEMPHIS, TN | PHOENIX, AZ | STAMFORD, CT |
| | DALLAS, TX | MIAMI, FL | PITTSBURGH, PA | TAMPA, FL |
| | DAYTON, OH | MILWAUKEE, WI | PORTLAND, OR | WASHINGTON, DC REGION |
| | DENVER, CO | MINNEAPOLIS, MN | PORTSMOUTH, NH | WHITE PLAINS, NY |
| | DETROIT, MI | MORRISTOWN, NJ | PROVIDENCE, RI | |

MY DIRECT DIAL IS: 972.728.3297
MY EMAIL ADDRESS IS: DAVISW@JACKSONLEWIS.COM

October 29, 2014

<u>**VIA CERTIFIED MAIL**</u>
<u>**RETURN RECEIPT REQUESTED**</u>
Parker Close Out Company
Attention: Ricky D. Parker
P. O. Box 181000
Fort Smith, AR 72918

         RE:    Asset Purchase Agreement Among Production Wireline and Cased Hold Services Group, L.L.C., Parker Energy Services Company and Ricky D. Parker

Dear Mr. Parker:

As you know, you entered into the above-referenced Asset Purchase Agreement on September 9, 2011 (the "APA"). The purpose of this letter is to request specific performance of certain portions of the APA, and provide you with an opportunity to cure breaches of other portions of the APA.

Page 4 of the APA contains a definition of Purchased Intellectual Property. Section 2.1 describes the Purchased Assets, which includes Purchased Intellectual Property, supplies used in connection with the Business, and goodwill. Section 2.5(b) sets forth your obligations to take the necessary steps after the Closing to insure that the Schlumberger obtained the full benefit of the Purchased Assets, Purchased Intellectual Property, and goodwill.

With respect to Purchased Intellectual Property, we have learned that your new business is using a deceptively similar name to the trade name you sold in the Asset Purchase Agreement. Of immediate concern is work done for one or more Schlumberger clients when your new business likely did not have a master service agreement in place. Schlumberger needs to review the records relating to all work performed by your new business venture to date along with the master service agreements to insure compliance with Section 7.10 of the Agreement. Demand is hereby made to tender those records to Schlumberger for review.

 



**jackson | lewis**

Attorneys at Law

Further, the domain name www.parkerenergyservices.com and related email accounts were supposed to be transferred to Schlumberger. Although the domain name was transferred, the mail exchanger (MX) record is still pointing to mail servers hosted by GoDaddy.com (secureserver.net) and this has not been transferred to Schlumberger as required by the APA. We have reason to believe that your employees have sent and received emails using this domain for the benefit of your new business. You have therefore failed to comply with the APA. The mail accounts are hosted by GoDaddy.com and Schlumberger does not have access to it as a result of your breach of the APA. Immediate steps need to be taken to preserve all electronic data, including emails, relating to this domain name. Nothing can be deleted or any evidence of its use destroyed. Further, steps need to be taken to transfer ownership of the email accounts to Schlumberger. In order to avoid any further use or potential destruction of evidence, Schlumberger also must be provided immediately with the GoDaddy customer ID number (and/or username) and password. This will enable us to get a list of all the email accounts and change the password on these email accounts.

With respect to tools and equipment, we have previously identified some of the missing tools. Although the investigation is ongoing, we have attached a list of additional missing equipment. Further, with respect to the tool boxes in the truck used by Mr. Myers, those were Purchased Assets on Schedule 3.3 of the Agreement and must be returned along with all of the tools contained in the boxes. Demand is hereby made for the immediate return of all tools and equipment.

As can be seen from Section 2.7 and Schedule 2.7, a large portion of the purchase price was allocated to goodwill. Demand is hereby made that you cease all activities which interfere with Schlumberger receiving the full value of the goodwill purchased from you. This would include making sure that James Myers, Brian Cook, Isaac Dees, Bobby Driver, Jeffery Billings, Kirk Gaither, Daniel Harrison, Jeremy Harrison, Richard Parker, Clint Slavens, James Carpenter, and Chad Walker comply with their obligations under their agreements they signed which were referenced in the APA.

Paragraph 2.5(b) of the APA provides that from time to time following the Closing, you must take further actions necessary to assure that Schlumberger received all properties, rights, remedies, and privileges intended to be conveyed under the APA. Failure to take the steps set forth above will be a breach of this provision of the APA. Please respond no later than November 3, 2014, regarding steps that will be taken to cure the breaches of the Agreement. If you fail to cure the breaches of the Agreement, the likely next step will be to proceed to arbitration under Section 12.3 of the Agreement.



Sincerely,

JACKSON LEWIS, P.C.



William L. Davis

WLD:eh
Enclosure

cc:    **VIA FACSIMILE: 479-782-9460**
      Jones, Jackson & Moll, PLC
      Attention: Mark Moll
      P. O. Box 2023
      401 N. 7th Street
      Fort Smith, AR 72902

# Appendix D

Filed
10/8/2014 5:06:23 PM
Annie Rebecca Elliott
District Clerk
Fort Bend County, Texas
Dannay Mascorro

CAUSE NO. 14-DCV-218252

| | | |
|---|---|---|
| SCHLUMBERGER TECHNOLOGY CORPORATION, | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § § | |
| v. | § § | FORT BEND COUNTY, TEXAS |
| RICKY D. PARKER and JAMES MYERS, | § § § | Fort Bend County - 268th Judicial District Court |
| Defendants. | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

Plaintiff Schlumberger Technology Corporation ("Schlumberger") files this action against Defendants Ricky D. Parker and James Myers, former employees of Schlumberger, and would show the court as follows:

## I. DISCOVERY CONTROL PLAN

1. Schlumberger intends to conduct discovery under Level 3 of Rule 190.4 of the Texas Rules of Civil Procedure, subject however to the expedited discovery sought in connection with the temporary injunctive relief to which Schlumberger believes it is entitled.

## II. PARTIES

2. Schlumberger is a corporation with its principal place of business at 300 Schlumberger Drive, Sugar Land, Texas, 77478.

3. Ricky Parker is a resident of the state of Arkansas, who may be served with process at his residence, 12034 Ridgefield Drive, Fort Smith, Arkansas, 72916.

4. James Myers is a resident of the state of Oklahoma, who may be served with process at his residence, 30645 West San Bios Road, Kinta, Oklahoma, 74552.

## III. VENUE

5. Venue is proper in Fort Bend County, Texas, because it is the county in which Plaintiff's principal office is located in. TEX. CIV. PRAC. & REM. CODE § 15.002. Venue is also proper as a result of the exclusive venue provision in the contracts at issue in this case, which specify Fort Bend County as the appropriate venue.

## IV. FACTS

### A. Ricky Parker sells his business and agrees to have employees sign Retention Bonus Agreements

6. On September 9, 2011, Ricky Parker entered into an Asset Purchase Agreement (the "APA") with Production Wireline and Cased Hole Services Group, LLC ("PW") to sell the assets of his business, Parker Energy Services Company. Having signed the APA, Ricky Parker was put on notice of paragraph 9.1(n) which required that employees James O. Myers, Carlus W. Call, and Jeremy N. Parker execute Retention Bonus Contracts. Ricky Parker knew of the terms of the Retention Bonus Contracts because the form required to be signed was attached to the APA as Exhibit C. PW was subsequently merged into Schlumberger. The trade name and all domain names using Parker Energy Services became the property of Schlumberger and the business was operated as Parker Energy Services, a Schlumberger Company.

### B. Ricky Parker and James Myers sign Intellectual Property, Confidential Information, and Non-Compete Agreement

7. The APA further put Ricky Parker on notice that he and any other employee who joined Schlumberger following the sale of his business, would have to agree to Schlumberger's policies and agreements. On September 10, 2011, Ricky Parker and James Myers entered into Intellectual Property, Confidential Information, and Non-Compete Agreements with Schlumberger (the "ICN Agreement"). True and correct copies of the ICN Agreements are attached as Exhibits A and B, and incorporated herein by reference. The ICN

2

Agreements contain detailed and specific definitions of Confidential Information. Ricky Parker and James Myers agreed that they would not remove any Confidential Information from Schlumberger, that they would deliver all Confidential Information to Schlumberger upon request, or upon termination of their employment, and that they would make available to Schlumberger all data storage devices which contained Confidential Information. The ICN Agreements further provide that Ricky Parker and James Myers will not disclose or use any Confidential Information after their employment with Schlumberger ended. The ICN Agreements further provide that while employed by Schlumberger, and for a period of one year after their employment with Schlumberger ended, they would not directly or indirectly work for or assist, whether as an owner, employee, consultant, contractor or otherwise any business or commercial operation whose business is in direct or indirect competition with the area of Schlumberger's business in which they were employed. The one-year restriction provides for an extension of time for the period of time for which the employee was in breach of those agreements. James Myers and Ricky Parker had management responsibilities over wireline, slick line and braided line operations in Oklahoma, Arkansas, Kansas, and Pennsylvania. Parker also had management responsibilities over Texas and Louisiana. The one-year restriction provides for an extension of time while they were breaching the restrictions. The agreements further provide that they could request a waiver of certain restrictions if they did so in writing 45 days prior to starting employment for which they were seeking a waiver. They never requested a waiver.

8.     The ICN Agreements further provide that they would not directly or indirectly recruit, hire, solicit or assist others in recruiting, hiring, or soliciting employees of Schlumberger. Schlumberger is only seeking to enforce this restriction with respect to

3

employees of the Parker Energy Services and Production Wireline business (which provided wireline, slickline and braided line services) for which they worked prior to their resignation.

9.      Ricky Parker and James Myers agreed that the restrictions contained in the ICN Agreements were reasonable.

## C.    James Myers signs a Retention Bonus Contract

10.     As contemplated by the APA, on September 15, 2011, James Myers signed a Retention Bonus Contract with Production Wireline and Cased Hole Services Group, LLC (the "Myers Retention Agreement"). A true and correct copy of this agreement is attached hereto as Exhibit C and incorporated herein by reference. Pursuant to the terms of the Retention Bonus Agreement, Myers was paid a substantial amount of money in connection with the sale of the business and his agreement to remain employed for a period of two years after he signed the agreement. He also agreed not to use or disclose Confidential Information, and to return all documents, email communications, computer data and other Company materials, whether or not they contain Confidential Information, upon the separation from employment with the Company or upon request. Myers further agreed that during his employment with Schlumberger and for a period of one year after his employment ended, he would not:

(a)     Solicit, contact, or accept work, which was the same or substantially similar to the work and/or services performed by him for the Company, from clients of the Company with whom he had business dealings during his employment with the Company.

(b)     Solicit, recruit, encourage, hire or assist any other person or entity to solicit, recruit, encourage or hire for employment any employee or independent contractor of the Company to work for a competitor. This restriction for purposes of the request for injunctive relief is limited to the employees of Parker Energy Services and Production Wireline business

4

(which provided wireline, slick line and braided line services) with whom James Myers had dealings, or about whom he had access to Confidential Information, while employed by Schlumberger.

(c) Directly or indirectly own, manage, operate, control, be employed by, be a consultant for, or perform any job functions for, any business that is in competition with the Company.

11. Myers agreed that these restrictions were reasonable. He further agreed that the payment of the bonus money was conditioned upon his complying with these restrictions as written. He agreed that if he challenged the enforceability of these restrictions, or if a court found them to be unenforceable, he would not be entitled to the bonus money, and would repay all bonus money previously paid. Schlumberger paid the bonus money and complied with its obligations under the agreement.

12. Since Ricky Parker was aware of the Retention Bonus Agreement as a condition of the sale of the business and his being paid substantial amounts of money in connection with the sale, he further agreed that the restrictions were reasonable.

**D.**     **Ricky Parker resigns from Schlumberger and starts a competing business**

13. Ricky Parker resigned from Schlumberger on October 2, 2013. He formed a competing business, PWL LLC, on April 7, 2014. He purchased trucks for use in the competing business and began to publish photos of the trucks using social media indicating his readiness to service clients. (Exhibit E). Schlumberger confronted James Myers regarding what he knew about the competing business and he claimed to have no knowledge, and also confirmed that he would not go to work for the competing business. Contrary to his representations, Schlumberger learned that while still employed by Schlumberger, James Myers was recruiting

5

Schlumberger's employees to go to work for the competing business. Ricky Parker took delivery of the trucks and began having Schlumberger employees, while still employed by Schlumberger and during working hours, come to the new business location. GPS tracking has confirmed that they were driving Schlumberger vehicles while at the competing business.

14. James Myers also began going to the new business location, while still employed by Schlumberger, during business hours. He was also using a Schlumberger vehicle. He also worked with Parker to obtain offers of employment for Schlumberger employees and set up a meeting with Schlumberger employees to present the offers. On September 16, 2014, with offer letters in hand, and the meeting set up, James Myers tendered his resignation to Schlumberger, shortly before the meeting with the Schlumberger employees to whom offers were going to be made. The terms of the offers required the Schlumberger employees to immediately resign with no notice. Ricky Parker and James Myers' intent in having Schlumberger employees resign with no notice was to have them all leave en masse so that Schlumberger would be unable to service customers. Ricky Parker and James Myers would then offer the services of their new company to the Schlumberger customers.

15. James Myers informed Schlumberger that he was retiring. He did not retire and has continued working for Parker's new business. He solicited a Schlumberger customer whose headquarters are in Texas. He did so after orchestrating the resignation of a number of Schlumberger employees, ostensibly to be able to tell the customer that Schlumberger no longer had enough employees to service the customer's business.

16. Schlumberger has also learned that while still employed by Schlumberger, James Myers was telling Schlumberger customers and sales representatives that Schlumberger could not take on new work. One of Schlumberger's customers confirmed that during the one-

year period covered by both Myers' and Parker's agreements, it had been solicited and had made the decision to move its business because Myers and Parker had hired away the employees the customer wanted working its wells. The breaches, both during Myers' employment and during the one-year non-compete period of Myers' and Parker's ICN Agreements, were intended to divert the business to the new business operated by Myers and Parker. Further, the business name used by them, "PW" and "Professional Wireline" is similar to the name used by Schlumberger – Production Wireline. Upon information and belief, Defendants have used this similar name to mislead at least one customer into believing the same business would be providing services. Defendants would not have been able to immediately negotiate a Master Services Agreement with the client for the new entity. As can be seen from Exhibit E, they are already performing services and it would have been impossible for them to do so without violating the terms of their agreements. Schlumberger also found that Schlumberger property was missing and made a demand for the return of the property. Some of the property has been returned, but other property is still under investigation. James Myers was essentially working for Ricky Parker's new business while still on Schlumberger's payroll.

E. **Schlumberger's efforts to protect its confidential information**

17. As set forth in Exhibit D, Schlumberger requires employees to agree to a number of policies to protect confidential information. Among other things, employees must agree to the Business Ethics Policy, Confidentiality and Information Security Policy, Conflict of Interest Policy, Data Privacy and Protection Policy, Intellectual Property Policy, and the Non-Disclosure Agreement. Computers are also password protected and access to confidential information is restricted. In addition to these policies, employees sign the above-referenced

7

agreements. Schlumberger has attempted to prevent employees from using its confidential information for personal gain, or disclosing it to third parties.

F.      **Schlumberger provided Ricky Parker and James Myers with access to confidential information**

18.      Both Ricky Parker and James Myers were in management roles at Schlumberger and also had extensive contact with Schlumberger customers. They had extensive access to, and used, Confidential Information as defined in the agreements at issue. Access and use was necessary for them to secure business for Schlumberger, staff the jobs, and service the customers. They also visited customers, learned their business needs and preferences, and communicated with other Schlumberger managers and sales representative regarding strategies for developing business. They were both the beneficiaries of the goodwill Schlumberger developed with existing customers.

## V.      CAUSES OF ACTION

A.      **Tortious interference with contract**

19.      Schlumberger incorporates its allegations set forth above as if set forth at length.

20.      Ricky Parker knew that James Myers entered into the Retention Bonus Agreement and the ICN Agreement. He willfully and intentionally interfered with those agreements. His conduct is not justified or privileged. This interference proximately caused injury to Schlumberger, for which Schlumberger incurred actual damages and/or losses. He will also be unjustly enriched by the interference. Accordingly, Schlumberger seeks actual damages, including, but not limited to disgorgement of his gains, monetary benefits, and profits.

8

**B.** **Tortious interference with prospective business relationships**

21. Schlumberger incorporates its allegations set forth above as if set forth at length.

22. Schlumberger had good business relationships with its customers, on whom it had spent time, effort, and resources to develop and maintain. Staffing projects being performed for customers with key personnel is essential for Schlumberger to maintain its relationships with its customers. It is reasonably likely that Schlumberger would have continued to maintain these relationships in the future based upon the good relationships it had enjoyed with them in the past. Defendants knew about these business relationships and staffing decisions on projects for customers. Defendants intentionally interfered with Schlumberger's prospective relationships with its customers. They targeted employees, orchestrated their starting to work for Defendants while still employed by Plaintiff, and then had them resign with no notice to cause Schlumberger problems servicing customers. James Myers further diverted business to the new business venture. Independently tortious and unlawful acts were committed during the interference with these prospective relationships.

23. Defendants' conduct is not justified or privileged. This interference proximately caused injury to Schlumberger, for which Schlumberger incurred actual damages and/or losses. Defendants will also be unjustly enriched by the interference. Accordingly, Schlumberger seeks to recover its damages, including, but not limited to, disgorgement of their gains, monetary benefits, and profits.

**C.** **Breach of contract**

24. Schlumberger incorporates its allegations set forth above as if set forth at length.

9

25. Ricky Parker started a competing business during the one-year period after his employment with Schlumberger ended. He also had James Myers recruiting employees of Schlumberger for the competing business and diverting Schlumberger customers to the competing business. James Myers, while still employed by Schlumberger, began working for the competing business, and began recruiting Schlumberger employees for the competing business. They continued violating the terms of their contracts as set forth above. Schlumberger is entitled to recover damages proximately caused by their conduct.

D. **Breach of fiduciary duty and duty of loyalty**

26. Schlumberger incorporates its allegations set forth above as if set forth at length.

27. As an employee in a management role in charge of the operations of the acquired business, Myers had a common law duty to serve Schlumberger faithfully and honestly. He was placed in positions of trust and confidence at Schlumberger. As a manager, he was entrusted with Company assets, customer relationships, employees, and developing and retaining business for Schlumberger. Myers breached the duty of loyalty and his fiduciary duties by working with Ricky Parker on the competing business as set forth in more detail above.

28. Schlumberger is entitled to recover damages proximately caused by his conduct.

E. **Aiding and abetting breach of fiduciary duty and duty of loyalty**

29. Schlumberger incorporates its allegations set forth above as if set forth at length.

30. As a former employee in a management role, and as a result of his knowledge of the terms of the APA, Ricky Parker knew that James Myers had a fiduciary duty

10

and duties of loyalty to Schlumberger following the acquisition. Ricky Parker knew James Myers was placed in positions of trust and confidence at Schlumberger. He knew Myers was entrusted with Company assets, customer relationships, employees, and developing and retaining business for Schlumberger. Ricky Parker aided and abetted James Myers in breaching James Myers' duty of loyalty and his fiduciary duties as set forth in more detail above.

31. Schlumberger is entitled to recover damages proximately caused by his conduct.

## VI. ATTORNEYS' FEES

32. As a result of the breaches of agreements by the former Schlumberger employees, including but not limited to the Defendants, Schlumberger has been required to engage the undersigned attorneys. Demands under the contracts have been made. Schlumberger is entitled to recover its attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice & Remedies Code.

## VII. EXEMPLARY DAMAGES

33. The conduct complained of herein was willful and done with malice, with the intent to harm Schlumberger. Defendants were grossly negligent and acted with reckless disregard and conscious indifference to the rights of Schlumberger. Schlumberger is therefore entitled to recover exemplary damages from Defendants.

## VIII. REQUEST FOR EMERGENCY AND PERMANENT INJUNCTIVE RELIEF

34. Unless immediately restrained, Ricky Parker and James Myers will continue to cause irreparable harm to Schlumberger for which there is no adequate remedy at law, including, without limitation, loss of existing customers, loss of business opportunities, loss of employees, loss of goodwill and business reputation, and loss of confidential information and trade secrets. Money damages cannot adequately compensate Schlumberger. As a result,

11

Schlumberger seeks a temporary restraining order until a date set for hearing (not to exceed fourteen days from the date of the order) and, after notice and a hearing, a temporary injunction preventing Ricky Parker and James Myers from further breaching their contracts until a trial on the merits. A temporary restraining order and temporary injunction are necessary to preserve Schlumberger's rights pending a trial on the merits and are warranted by the plain language and requirements of the Agreements.

35. There is a substantial likelihood that Schlumberger will prevail on the merits. Ricky Parker and James Myers have violated the terms of their contracts by their conduct set forth above.

36. The threatened injury to Schlumberger outweighs any possible damage to Ricky Parker and James Myers because an injunction would simply require them to live up to their obligations under the contracts. They were paid substantial sums of money in connection with the sale of the business and ancillary Retention Bonus Agreement as consideration for their complying with the terms of their agreements.

37. The public interest is served by an injunction as it protects Schlumberger's confidential information and goodwill.

38. Schlumberger is entitled to a temporary restraining order, temporary injunction, and permanent injunction restraining Ricky Parker and James Myers from:

(a) Retaining, concealing, moving, or sharing with others any of Schlumberger's equipment, property, documents, reports, files, books, records, or Company Confidential Information.

(b) Deleting or destroying any Company Confidential Information contained on any computer, phone, disc, data storage device, email account, or cloud storage.

12

(c) Failing to provide to Schlumberger, as required by paragraph 4 of the ICN Agreements, access to computers or other electronic data storage devices containing Company Confidential Information;

(d) Directly or indirectly working for, or assisting (whether as an owner, employee, consultant, contractor or otherwise) any business or commercial operations of wireline, slick line and braided line operations in Oklahoma, Arkansas, Kansas, Pennsylvania, Texas or Louisiana;

(e) Disclosing Company Confidential Information to any third party;

(f) Using Company Confidential Information;

(g) Directly or indirectly recruit, hire, solicit or assist others in recruiting, hiring, or soliciting employees of Schlumberger who worked in the Parker Energy Services and Production Wireline business (which provided wireline, slick line and braided line services); and

(h) Soliciting, contacting, or accepting work, which was the same or substantially similar to the work and/or services performed by them for the Company, from clients of the Company with whom they had business dealings during their employment with the Company.

39. To the extent, however, that the Court should find that Agreement to be overbroad or unenforceable to any extent, Schlumberger alternatively requests that the Court reform the Agreement as authorized by the Section 15.15(c) of the Texas Business and Commerce Code.

## IX. CONDITIONS PRECEDENT

40. All conditions precedent to Schlumberger's claim for relief has been performed or have occurred, or were otherwise met, waived, or excused. Schlumberger is the

13

parent as well as an Affiliate of PW within the definitions in Retention Bonus Agreement, and is entitled to enforce the terms of that contract.

## X. RELIEF REQUESTED

41.     Schlumberger seeks monetary relief of between $200,000 and $1,000,000 and non-monetary relief.

THEREFORE, Schlumberger respectfully requests that this Court:

(a)     Issue a temporary restraining order enjoining Ricky Parker from the conduct set forth above;

(b)     Issue a temporary restraining order enjoining James Myers from the conduct set forth above;

(c)     After a hearing, issue a temporary injunction as requested above pending a trial on the merits;

(d)     After a trial on the merits, issue a permanent injunction and order specific performance of the Agreement as requested above;

(e)     Award Schlumberger attorneys' fees and costs of suit; and

(f)     Grant Schlumberger all other relief, in law and in equity, to which Schlumberger may be entitled.

14

Respectfully submitted,

*/s/ Jeff Barnes*
Jeff Barnes
State Bar No. 24045452
barnesj@jacksonlewis.com
JACKSON LEWIS P.C.
1415 Louisiana, Suite 3325
Houston, Texas 77002-7332
PH: (713) 650-0404
FX: (713) 650-0405

and

William L. Davis, Esq.
State Bar No. 05563800
davisw@jacksonlewis.com
JACKSON LEWIS P.C.
500 N. Akard, Suite 2500
Dallas, Texas 75201
PH: (214) 520-2400
FX: (214) 520-2008

ATTORNEYS FOR PLAINTIFF
SCHLUMBERGER TECHNOLOGY
CORPORATION



15

# VERIFICATION

STATE OF TEXAS §
§
COUNTY OF BEXAR §

BEFORE ME, the undersigned authority, on this day personally appeared Michael Yarbrough of Schlumberger Technology Corporation, who being by me duly sworn, upon his oath stated that he is fully competent and duly authorized to make this verification on behalf of Schlumberger Technology Corporation, that he has read the foregoing *Plaintiff's Original Petition and Application for Temporary Restraining Order and Temporary Injunction*, and the facts stated in paragraphs 6 through 18 are within his personal knowledge and are true and correct to the best of his knowledge, information and belief.

_____
Michael Yarbrough

SUBSCRIBED AND SWORN to before me, the undersigned authority, on this 5th day of October, 2014.

MICHELLE ELLWOOD
MY COMMISSION EXPIRES
September 5, 2016

_____
Notary Public in and for the State of Texas

My Commission Expires: September 5, 2016

16